————o————

STATE *ex rel.* SCHOOL DISTRICT No. 2, T. 39, R. 28, ST. CLAIR Co., Appellant, *vs.* BOARD OF EDUCATION OF APPLETON CITY, Respondent.

1. *Schools—Sub-district—Organization of towns with adjacent territory—Votes —Particulars as to, what unessential to validity of organization—Directors— Ouster of, grounds for.*—Territory embraced in a school sub-district outside of and adjoining an incorporated town may, under art. 2, § 1, *et seq.* of the school law (Wagn. Stat. 1262), be organized at the same time with that part within the corporate limits.

And it is not necessary, to render such organization lawful, that the voters of the sub-district residing within and without the corporate limits shall be in a certain ratio to each other, or that all or any given number of those qualified shall vote at the election, or that the votes shall all be lawful, provided that a majority of the lawful ones are for the organization. And *a fortiori* no such grounds will lie for ouster of directors elected under such organization, where there is a general acquiescence in the organization and election till the issue of bonds by the sub-district, and the erection of a school house from the proceeds.

And to authorize ouster of the directors for failing to receive a majority of the qualified votes, that fact must appear affirmatively.

*Appeal from St. Clair Circuit Court.*

*E. J. Smith, with W. P. Johnson,* for Appellant, cited : State *ex rel.* Case vs. Searl, 50 Mo. 268 ; Sess. Acts 1867, p. 165 ; Adj. Sess. Acts 1868, pp. 163, 164 ; Adj. Sess. Acts 1870, pp. 127–134 ; Adj. Sess. Acts 1874, pp. 192, 193 ; Gen. Stat. 1865, ch. 47.

*Clark & Ferguson,* for Respondent.

NORTON, Judge, delivered the opinion of the court.

This is a proceeding by *quo warranto* at the relation of school district No. 2, of township 39, range 28, in St. Clair county,

against the board of education of Appleton City, charging them with usurping control over the territory and local affairs of said district No. 2.

The cause was tried upon an agreed statement of facts, from which it appears, that previous to the year 1870 said school district No. 2 was organized, and included all of sections 5, 6, 7 and 8 in said township ; that in 1870 the town of Appleton City was laid out on a part of said section 5, and was duly incorporated by the county court of said county in February; 1871 ; that on the 10th of April, 1871, twelve resident freeholders of said district No. 2, eleven of whom resided in the said town and one outside of its limits, but within the limits of the district, caused a notice to be put up in three places in said town, notifying the electors of said district No. 2, including the town of said Appleton City, that on the 20th of April, 1871, a meeting would be held at the office of Reed & Emmons in said district, then and there to vote by ballot for or against the adoption of an act for the organization, in towns, of schools with special privileges. In pursuance of said notice a meeting was held at the place and time designated, at which seven residents of said district were present, two of them being outside and the others inside the town, who proceeded to vote for "school law," or "no school law." All voted except one who lived inside the town and one who lived outside the town, and the result was declared to be in favor of the school law as provided in the Act of March 1870, "to authorize cities, towns and villages to organize for school purposes with special privileges." On the same day these notices were posted up, two inside and one outside of said town, stating that an election would be held on the 6th day of May, 1871, at the office of Reed & Emmons, for the election of six members to constitute the board of education for the town of Appleton City. At the time and place designated an election was held, at which six directors were elected, three of them being inside the limits of the town, and three of them being outside.

It is admitted that sixty-six persons voted at the said election, of whom forty-three lived in the town and twenty-three out of it, and of the whole number fifteen were registered and fifty-one not

registered. It appears that the registering officer of the township came there on that day, and without notice having been given, swore those not formerly registered, and had them to sign the registration, but did not make any return or preserve the list.

The board thus elected organized on the 15th of May, and on the 29th of the same month issued $12,000 of bonds for the erection of a school house, and on the 31st of August issued $3,000 more of bonds for the same purpose, all of which went on the market and were sold. It was admitted that, ever since, said board of education has exercised and claimed authority over all the territory embraced in said district No. 2 ; that with the proceeds of said bonds they did erect a school house ; that the people outside of said town acquiesced in said organization till September, 1871, when they were advised they were not bound by it ; that a school was taught in said house, and from November, 1871, to May, 1872, the children throughout the district attended the same, and that there was no other school taught in the district ; that in April, 1872, the people in said district No. 2, outside of said town, elected three directors for said district, and have continued annually to elect them since that time, and have continued to conduct a school independent of the school conducted by the board of education of Appleton City. It was also admitted that the records of the county court still recognize said sub-district No. 2 as an existing district.

On a trial of the cause the information was dismissed, defendants discharged and judgment for costs rendered against the relators, from which they have appealed.

The main question presented for our determination is whether, under the facts, sub-district No. 2 was merged in the school district of Appleton City.

The 1st section of the acts of 1867 provides that " any city, town or village, the plat of which has been previously filed and recorded in the recorder's office of the county wherein the same is situated, together with the territory attached, or which shall hereafter be attached to any such city, town or village, may be organized and established into a single school district, in the manner and with the powers hereinafter specified."

Section two provides that in order to form such organization written notice shall be posted up in three or more public places in said contemplated district, signed by at least twelve resident freeholders of the same, requesting the qualified electors in said district to assemble upon a day, at some suitable place to be named in said notice, then and there to vote by ballot for or against the adoption of this act, which notices shall be posted at least ten days prior to said meeting.

Section three provides that the electors, when assembled, shall appoint a chairman, assistant chairman and clerk, who shall be judges of the election. The electors in favor of the adoption of this act for said district shall write on their ballots " School Law," and those opposed thereto " No School Law," the adoption or rejection of the act to be determined by a majority of the votes to be cast as aforesaid. In case a majority of the votes thus cast shall have been for the law, the electors of said district shall assemble at the same place within twenty days from the adoption of this act, of which ten days' notice shall be given, and shall then choose by ballot six directors of the public school of said district.

The directors, within ten days after their election, shall meet and organize by choosing a president, secretary, treasurer, etc.

It is insisted by counsel that in order to include the territory outside the corporate limits of the town, the town must first be organized as a single school district, and the outside territory then attached under section seventeen of the act.

This question is not one of first impression, for the point involved in it was expressly passed upon by this court, in case of the State *ex rel.* vs. Board of Education of Appleton City, 53 Mo. 127. The same question was again involved in the case of the State *ex rel.* vs. Heiser, 60 Mo. 540. In that case the town of Kingston, which was included in sub-district No. 2 in Caldwell county, organized a single district under the same law under which respondents in the case at bar organized. Judge Vories in disposing of the point says : " In this case all of the territory included in district No. 2, embracing Kingston, was attached together for school purposes ; and it was necessary and proper when an attempt should be made to organize the town of

Kingston under this law, that the whole district of country thereto attached for school purposes should be included. * * * If, after the separate school district is organized under the law, it becomes desirable to have additional territory from other portions of the township annexed for school purposes, it must be annexed under the provisions of the seventeenth section."

It is true, it is said in that case, "that it was right and proper that all of the qualified voters should vote and participate in such organization," which seems to have been done. The inference, however, is not to be drawn from this language, as counsel have attempted to do, that it required all or any given number of the qualified voters to vote on the organization of a single district, especially so when the law authorizing the proceedings declares in express terms that the adoption or rejection of the act shall be determined by a majority of the votes cast without reference to the number which may be cast.

The objections taken to the manner in which the notices were posted, as well as to the fact that only five voted on the question of adopting the law, and that eleven of the twelve who signed the notices lived in the town, and only one outside of it, are too technical to impeach their validity.

It appears that at the election for directors of the board of education for Appleton City, the voters both of the town and subdistrict participated, and the result was the election of three directors residing outside and three residing inside the town. It further appears that of those who voted, only fifteen were registered voters and fifty-one not registered, unless the act of the registering officers on the day of the election, in requiring those who had not been registered to take and subscribe an oath, the character of which is not disclosed in the facts agreed upon, is to be considered a registration. But conceding this to be so, the main fact that illegal votes were cast at the election, and mingled with legal votes, does not make the election void nor impeach the title of those elected if they received a majority of the votes of those who were legal voters.

There is nothing in the record nor agreed statement of facts showing that the directors elected did not receive a majority of

the legal votes cast, a fact which must appear before judgment of ouster could be rendered against them. It further appears that there was a general acquiescence in the election of the directors, and the organization of the single district for Appleton City, until after $15,000 of bonds had been issued and a school house built out of the proceeds, and not till then was it that the irregularities were discovered which constitute the ground of relator's complaint. We think the judgment of the court below was rendered for the right party under the law and facts of the case.

Judgment affirmed, the other judges concurring.