Lemay vs. Johnson.

---

## LEMAY VS. JOHNSON.

1. CHANCERY PRACTICE: *Motion for new trial: Bill of exceptions.*
   In equity cases all papers properly filed in the cause become, on appeal, parts of the record to be included in the transcript. No motion for a new trial is necessary; nor is a bill of exceptions, except where oral testimony has been used and not taken down and filed as depositions, or interlocutory transactions have occurred which would otherwise be excluded from the record.

2. SAME: *Landlord may enforce lien on proceeds of crop in court.*
   Where the proceeds of a tenant's crop are in the hands of a receiver appointed by the court in a suit by a mortgagee to foreclose his mortgage on it, the landlord of the tenant may interplead and enforce his lien for rent upon the proceeds, whether the rent was to be paid in money or a portion of the crop, or other property, or services.

3. LANDLORD'S LIEN: *Not prejudiced on balance by releasing part of crop.*
   A landlord's lien covers the whole and every part of the tenant's crop; and his release of a part of it will not subordinate his lien on the balance to the lien of a mortgagee upon the crop.

4. ALTERATION: *Unauthorized insertion of date in contract.*
   The unauthorized insertion of a date, or any other matter, in a blank, prejudicial at law to the maker of a contract, avoids it both in law and in equity, although the date, in equity, may be a matter of indifference. But where a mortgage on a crop to secure supplies was executed with a blank date before the crop was planted, and with an agreement to date and acknowledge it after the crop should be planted, and the supplies were furnished by the mortgagee, the insertion of the subsequent date by the mortgagee was not unauthorized, and the mortgage was valid in equity as of its actual date, notwithstanding the subsequent refusal of the mortgagor to date and acknowledge it as agreed.

15

Lemay vs. Johnson.

APPEAL from *Lafayette* Circuit Court in Chancery.
Hon. A. BYRNE, Special Judge.
*Williams & Battle*, for appellant.
*Cook, contra.*

EAKIN, J.   This cause brings again before the court the note and mortgage which were collaterally considered in the case of *Lemay v. Williams, 32 Ark., 166*.   The question presented by the record in that case, was whether or not prosecution of an attachment suit before a justice of the peace, based upon these instruments, and which had been dismissed, was malicious and without probable cause.   The court stated hypothetically that if, in fact, the holder of the note had altered the date, without the consent of the maker, and *to his prejudice*, it was a forgery, and the note void.   This was merely the statement of an undoubted abstract proposition.   The court in that case left this out of the question as a matter of fact, and decided it on the want of jurisdiction in the magistrate, and the invalidity of the mortgage under the law, then in force, to give a right to proceed in an action at law to enforce it.   The matters reappear in a suit in equity, upon independent evidence.   This cause must be decided upon its own record.

Lemay, a merchant, filed this bill on the fourth day of December, 1874, against Williams, a renter on the plantation of John D. Parks, stating that on the seventh day of May of that year defendant executed to him, and on the twenty-fifth duly acknowledged a mortgage, which is exhibited.   In consideration of the sum of one hundred dollars paid as advances by Lemay, it conveys to him the entire interest of Williams in all the crop or crops planted and to be planted and gathered on the Parks place that year, to be void if Williams should, on or before the twenty-fifth day

of December, pay to Lemay all dues and demands which the latter might legally and justly hold against him. It authorized Lemay to take possession of the crops when the amounts should become due, and sell them to pay the debt; or to take possession of them when gathered and hold them until the debt should be due, and then sell.

The bill then sets forth and exhibits a note of defendant to Lemay, bearing date of May 7, 1874, and payable on the twenty-fifth of December following, for the sum of $158, to bear interest at the rate of 10 per cent. per annum from the first day of January, 1875, with a waiver of all rights under the exemption laws; which note is alleged to be a charge on the mortgaged property.

It proceeds to charge that Williams had raised and gathered, on the Parks place, about 4,500 pounds of seed cotton, three bales of cotton, and about two hundred bushels of corn, which, or a large portion thereof, he had removed, and was about to remove or dispose of to the injury of complainant, and that he had refused to deliver said crop according to the agreement, to be held until the note should fall due.

The prayer seeks a decree for the debt and a foreclosure of the mortgage lien; and that meanwhile a receiver be appointed to take and sell the property, and hold the proceeds; besides general relief.

In response to the prayer a receiver was appointed for the cotton, alone, who took possession and reported a sale of the seed cotton for $162, and the bales for $181.29.

Williams, in his answer, denies the acknowledgment of the mortgage on the twenty-fifth of May, or at any other time, but admits that it was signed and delivered to complainant on the thirty-first of March, 1874, with a blank date. He admits the execution of the note, but says it

was on the seventh day of April, and bore that date. He says that, then, none of the crops of corn or cotton had been planted; and that complainant, afterwards, in order to obtain a lien at law, altered the date of the note by erasing "April" and inserting "May;" and altered the mortgage by inserting in the blank the date of May 7, and causing a fictitious acknowledgment thereof to be appended as of the date of the twenty-fifth of that month; and that these alterations were without his consent. He therefore submits that the note and mortgage are not his acts and deeds; and that by them complainant took no lien.

John D. Parks, the landlord, was, on the sixth of January, 1875, admitted to interplead for his rents; and set up a contract of his tenant, Williams, to pay him as rent for that year, one thousand pounds of lint cotton, ginned and baled, of the first picking, and one hundred bushels of corn, to be delivered on the first of November. He says the 4,500 pounds of seed cotton were of the first picking, and that, ginned and baled, it would have been worth $125. The corn was also worth $125. He says he has not been paid, and claims his lien.

Complainant says, in reply to the interplea, that when the cotton was seized there were left on the place 700 pounds of lint cotton of the first picking, which remained there nearly a month; and that Parks, knowing of this suit and proceedings, consented to and permitted the removal and disposition of it by Williams. Also, that two hundred bushels of corn were left upon the place, of Williams' crop, and has there remained; and to the extent of one hundred bushels has been consumed by Williams, with the consent and permission of the interpleader.

The regular judge being disqualified, the cause was heard before a special judge, upon the pleadings, exhibits

Lemay vs. Johnson.

and a mass of evidence.   Parks, meanwhile, had died, and
Mary F. Parks been made administratrix *ad litem.*

The court found, amongst other things, that Parks had
permitted Williams to use and consume the corn raised
upon the place, without any effort to collect his one hun-
dred bushels, for rent; that 1,000 pounds of the lint cot-
ton seized was worth $125; and that the interpleader had
a lien to that extent, alone, on the fund in court; that
complainant had agreed to furnish Williams with supplies
for the year 1874, to the extent of $100, and that the lat-
ter was to give a mortgage to secure the same, together
with all other indebtedness which might be owing to com-
plainant on the first day of January, 1875; that upon the
settlement of past indebtedness made, in pursuance of said
agreement, on the seventh day of April, 1875, Williams
was found indebted in the sum of $158; that he then exe-
cuted the note in question bearing that date, and signed
the mortgage with the date in blank, which was left in the
custody of complainant, upon an understanding between
them, that it should be consummated by execution,
acknowledgment and delivery, after the crops should be up
and growing; that afterwards complainant refused to fur-
nish the necessary supplies, as contemplated; whereupon
defendant receded from the contract, and did not actually
execute and acknowledge- the mortgage.   Further, that
afterwards, on the twenty fifth day of May, 1874, com-
plainant, without defendant's consent, filled the blank in
the date with "May 7;" and without the authority, knowl-
edge or consent of defendant, caused a certificate of
acknowledgment to be appended thereto, and had the in-
strument recorded.   The court was of opinion that this,
in appearance, changed the legal effect of the instrument;
which, in fact, was a mere inchoate agreement; or, at

Lemay vs. Johnson.

most, would have been only an equitable mortgage *inter partes*, but for the unauthorized acts of complainant, and his refusal to furnish supplies; and that therefore the instrument was not the act and deed of defendant. Further, the court was of opinion that the change in the date of the note was immaterial and did not affect any substantial rights of defendant.

Whereupon, the receiver was ordered to pay, out of the fund, to said Mary F. Parks, the sum of $125, with interest from January 1, 1875, and her costs; and to pay the residue to defendant, Willliams. A personal decree in favor of Lemay was rendered against Williams for $222.42, and his costs, excepting the costs and expenses attending the proofs touching the mortgage, and the costs of the receivership, which were adjudged in favor of Williams against Lemay.

1. CHANCERY PRACTICE: Motion for new trial: Bill of exceptions. Both Lemay and Mary F. Parks, as administratrix *ad litem*, have appealed. The depositions are brought upon the record by bill of exceptions. which was wholly unnecessary. In equity cases, all papers properly filed in the cause become, on appeal, parts of the record, to be included in the transcript. No motion for a new trial is essential, nor is a bill of exceptions necessary, except where oral evidence has been used, and not taken down and filed as depositions, or interlocutory transactions have occurred which would be otherwise excluded from the record.

There was no error in rendering the personal decree against Williams. The debt was not, in effect, contested. The alteration in the date of the note, if made by Lemay, as charged, could not alter its effect in any manner, and, of course, was not to the prejudice of defendant. This is conceded, and Williams does not complain.

First: as to the appeal of the interpleader. The land- 2. LAND-
lord's lien extended to the whole crop. The specific rents, LORD'S LIEN
in several kinds of produce, were agreed modes of satisfac- Covers
tion. If not paid, the landlord's lien for their value re- whole crop.
mained; overflowing all the crops of every kind. There
was no agreement to take proportions of the several crops,
but absolutely 1,000 pounds of cotton of the first picking,
and 100 bushels of corn. It will not be seriously contended
that if the tenant, after that, had used the land in the pro-
duction of hay, potatoes, wheat, or any of the crops usual
in the country, other than corn and cotton, the landlord
would have lost his lien altogether. Unless he has done
something to estop himself, he had a first lien upon all, or
any part of the crop, for the full value of unpaid rent
(*Gantt's Digest, sec. 4098*), which continued for six months.
"Rent" does not imply, necessarily, the idea of money. It
is something *rendered* for the use of land or tenements, and
may be in money, chattels, provisions, or labor. The statu-
tory lien is given to secure not only the payment of money,
but the delivery of other property, or the rendition of ser-
vices. The application was made before the lien expired,
but after the sale. It is contended by appellant, Lemay,
that it followed the crop, and did not attach to the fund.

At the time of the sale, by the receiver, Parks was not
a party to the suit, and if the property had been of durable Enforce d
value, such as land or anything not likely to be removed, on proceeds
or deteriorate, there is no doubt but that he might have of crop in
kept out, and followed it into the hands of a purchaser. court.
For, in such case, it would not have been proper in the
Chancellor to have ordered a sale *pendente lite;* and it would
be unjust to deprive him of his vested right to a prior lien
without making him a party to the proceeding. But the
property being cotton, mostly in the lint, and all of it of a

nature to deteriorate, or be lost by fire, or other casualty, it was wise in the Chancellor, acting *in rem*, upon property under his control, to sell out the *whole* interest for the benefit of all concerned, and substitute the fund produced for the property itself. It was a mere change in the nature of the fund—a substitution of money for cotton. It was done to *preserve* the fund, and was for the benefit of all interested in it. There is no proof that it brought less than its full value, nor was there any order that it should be sold, subject to prior liens. Sales for preservation of perishable personal property which has come into court, partake of the nature of admiralty sales, so far as this: that whilst they may not divest *titles* out of strangers, they may make mere liens attend the conversion, and adhere to the fund produced. Otherwise, this means of remedial justice could not be beneficially used, as purchasers would be too chary of bidding, and no fund might be produced, at all proportionate to the value. By holding the fund for the benefit of any who may be interested in it, and who may apply in apt form, and due time, the equities of all may be well adjusted. It is only necessary, however, in this case to hold that Parks had at least the option to apply to be admitted to the fund, and this has been already determined by this court in the case of *Mitchell et al. v. Badgett, 33 Ark., 387*, where a landlord was permitted to come, for his rent, upon a firm which had purchased cotton from a tenant and sold it. The principle applies *a fortiori* to a receiver, claiming no interest for himself. The interplea was properly entertained.

We think the Chancellor erred in limiting the extent of the claim to the value of the lint cotton. This is not a case of marshaling where a senior incumbrancer of two funds releases one to the prejudice of a junior incumbran-

Releasing part of crop.

cer of the other, alone. The equity of compelling the senior incumbrancer to postpone his lien upon the doubly-charged fund, to the extent of the value ·of the property released, is based upon this, that by his release of the singly-charged fund he has cut off *pro tanto* the junior's right of subrogation, and left him helpless.

There is nothing to which he may be subrogated. Even then the senior is not obliged. to credit his debt absolutely. He is only postponed *pro tanto* in his. priority as to the doubly-charged fund, and if there be any left of it after satisfying the junior, he may come in for the balance.

The reason of the doctrine has no application to senior and junior liens upon the same property, both *in toto*. The junior has his independent lien already upon every part, and needs no subrogation: His equities can not be affected by allowing the senior to release a part and make his debt out of the remainder, because the junior lien upon the part released, so far from being thereby lost, becomes a first lien and he is compensated to the exact extent in which he may be detruded from the balance.

The landlord, whilst held t⟩ refrain from doing active injury to a junior incumbrancer, is under no obligation to collect the debt of the latter, or take steps to keep it secure. He may look alone to his own interest, and be content to see enough remaining for his security. It is for the junior incumbrancer to take care that enough be left for both, and upon him devolves the duty of husbanding the funds, to make them cover all. For this purpose he has the right of redemption and subrogation. In the case in judgment, Lemay might have made Parks an original party, and had the receivership extended to all the crops, or so much as would pay both. He could not sue for himself, seize a part, and force the landlord to exhaust the re-

mainder. It would be to impose duties and risks upon the latter, from which his priority exempts him.

No laches is imputable to Parks from indulgence of Williams, and therefore the Chancellor erred in not admitting his administratrix to full payment out of the fund in court, to the extent of the value of the whole rent, less the value of about nine bushels of corn paid to Parks through Dobson & Howell.

Upon the appeal of Lemay it appears that the mortgage in question was signed and delivered to him, by Williams, about the last of March or near the first of April, 1874. Williams, at that time, was indebted to Lemay for the balance of an account of the previous year, something over one hundred dollars, and received supplies on the new mortgage to the extent of about $23 or $27. It was given with the understanding, between them, that after the crops should be planted and growing, Williams would properly acknowledge it, and that the date, then left blank, should be filled up as of the date of the acknowledgment. It expressed the consideration of one hundred dollars, "to me paid as advances by Samuel B. Lemay," and was to be void if the mortgagor should pay him on or before the twenty-fifth day of December, 1874, "all dues and demands which he may legally and justly hold against me on that day."

About the middle of April of that year, Lemay refused the application of Williams to get a pair of shoes, of which he was greatly in need, and declined to extend him any further credits. Whereupon Williams refused to acknowledge the mortgage when applied to, on the twenty-fifth of May, but did not deny the debt, nor that he signed the mortgage, and expressed his intention to pay it. The purport of his remarks was, that he declined to acknowledge

Lemay vs. Johnson.

as of that date, and to give Lemay any advantage which might accrue from such acknowledgment. Whereupon the date of first of May was filled in by Lemay, upon consultation with the justice who went to take the acknowledgment, and the latter appended the certificate. Upon these facts defendant contends that the mortgage is not his deed.

At the time of the transactions, a mortgage upon a crop not planted was recognized only in equity. The object had in view by the parties in providing for a future date upon a future acknowledgment, was to give it the character of a legal mortgage, with more ready means of enforcement.

In this view the date was material, as, after planting the crop, it would change its nature and effect *between the parties*. And although a court of equity would give a *bona fide* instrument of this character the same effect, regardless of date, it would take notice of an alteration meant to vary legal rights, and hold it to be annulled, upon the same grounds which would have that effect in a court of law. An unauthorized insertion of a date, or any other matter, in a blank, prejudicial at law to the maker, avoids it both in law and equity, although the date in equity may be a matter of indifference.

4. ALTERA-
TION:
Unauthor-
ized inser-
tion of date
in contract

That the insertion of the date was, or might have been prejudicial at law, to Williams, is apparent. In the language of Lemay, it would "hold his corn," although there was no cotton planted on the 7th of May. The question narrows to this: Was it unauthorized?

The instrument, when given, was a good security in equity, and, as such, was fully executed and acted upon. Credit was partially extended. It could not be considered an escrow in the hands of the mortgagee. *Reed v. Latham*,

*1 Ark., 66 ; Inglish v. Breneman, 5 Ark., 378 ; Scott v. State Bank, 9 Ark., 36.*

The authority to insert a future date was expressly understood to be conferred, and that for the very purpose of changing it from an equitable to a legal mortgage. It seems to have been contemplated that this should be done by the magistrate at the time of taking the acknowledgment; but the exact time was not material, after the crop was planted; nor was the particular hand by which the date was to be inserted. The substantial thing in view was that Lemay should have the benefit of some date after the crop was in. This was a power conferred for the benefit of Lemay, and could not be retracted.

The defendant afterwards refused to acknowledge, as intended.

Whether or not any harsh conduct of Lemay rendered this pardonable in morals does not become us to say, as it is not set up as a defense. As he had already enjoyed a partial benefit from the mortgage, he should perhaps have adopted some other mode of redress for any supposed injury. Suffice it to say that he rests his defense on the ground that the mortgage is not his deed.

There could, of course, be no dating of the time of acknowledgment. Lemay did not thereby lose his right, not only to hold it as an equitable security, but to have it changed to a legal mortgage. The insertion of the date was made with the knowledge and assent of the justice (as the proof shows), and although wholly ineffective to have changed the instrument, against the showing of the true date, yet the attempt was no less in pursuance of an agreement to that effect. This does not seem to come within the range of any of the principles upon which alterations of instruments have been held to avoid them. The

court below should have given the mortgage the effect it would have had if bearing its true date of the last of March or the first of April, and as it originally stood between the parties. That would have given Lemay a right to the payment of his note out of the fund, after satisfying the full rent remaining due the landlord. The balance, if any, should have been paid to Williams, after adjustment of costs.

So much of the decree as renders a personal decree against Williams will be affirmed, and it will be in all else reversed. Let the cause be remanded, with directions to the court below to distribute the fund in court in accordance with this opinion, and take such further proceedings as may be required. The adjustment of costs will be in the discretion of the Chancellor.