## BEAVERS *v*. STATE.

### Opinion delivered January 5, 1895.

1. *Quo warranto—Organization of school district.*

    An information by the Attorney General in the nature of quo warranto against the directors of a school district is a proper proceeding to test the legality of the organization of the school district.

2. *Single school districts—Annexed territory.*

    Under Sand. & H. Dig., sec. 7088, which provides that "any incorporated city or town in this State, including the territory annexed thereto for school purposes, may be organized into and established as a single school district in the manner and with the powers hereinafter specified," construed with other sections of the same act *in pari materia*, *held*, that when a city or town is organized into a single school district, such territory as should thereafter be annexed to it would be included

in the district so organized, but that territory which had been previously annexed to such city or town for school purposes would not be embraced in the new organization.

Appeal from Scott Circuit Court.

EDGAR E. BRYANT, Judge.

*S. R. Cockrill* and *Ashley Cockrill* for appellants.

The cardinal question in this case is, could the town of Waldron organize itself into a single school district without giving the voters of the old district who resided outside of the corporate limits, a voice in the election? The provisions of our statute governing the question are Sand. & H. Dig. secs. 7088, 7089, 7090, 7106, 7113. That meaning should be given to a statute which is most in consonance with other provisions on the same subject. 56 Ark. 133; 16 Kas. 587; 4 Ark. 410; 23 *id.* 308; 47 *id.* 388; 40 *id.* 452; 45 *id.* 391. The appellee depends upon the phrase, "*including the territory annexed thereto for school purposes*," and claims that the adjacent territory previously annexed cannot be left out in the formation of a single district. But all the other provisions of the act are inconsistent with the meaning attempted to be placed on this provision. Cases *supra.* The question has been determined adversely to appellee's contention in Missouri under a statute almost identical (and from which ours was doubtless taken) with ours. Wagn. St. 1262, sec. 1; 50 Mo. 268; 74 Mo. 443. It has also been held in Missouri that territory annexed to a town for school purposes may be organized with the town into a special school district. 53 Mo. 127; 64 *id.* 53; 60 *id.* 540; 74 Mo. 443. The Missouri statute is almost identical with Sand. & H. Dig. sec. 7088. It follows then that the special school district was legally organized, and the directors legally chosen, and that the outlying territory is no part of the district.

2. The election was legally ordered, and the result is contested only upon the ground that legal voters were excluded from participating in it. But the county court alone has jurisdiction over contested elections. Sand. & H. Dig. sec. 2697; 50 Ark. 266; Sand. & H. Dig. sec. 2728. It is not the office of quo warranto to determine which set of directors was entitled to administer the affairs of the district. 27 Ark. 12; *Ib*. 176; 50 *id*. 266; 38 Mich. 405; 12 Lea, 30; 7 Cold. 59; 52 Tex. 336.

*Jas. P. Clarke*, Attorney General, and *Winchester & Martin* for appellee.

1. The suit was properly brought, and against the proper parties. 4 Am. & Eng. Enc. Law, 294; 129 Ill. 169; 24 Tex. 80; Sand. & H. Dig. sec. 7364–5, 7368; 28 Ark. 455; 4 A. & E. Enc. Law, 198, and note 4.

2. The outlying territory was a part of the school district for the purposes of the act of 1868, and any organization under that act, which did not include it, was unauthorized. Sand. & H. Dig. secs. 7088–9–90. Construing the whole law, it is manifest that the old district cannot be dismembered, and its territory taken to form a special district, without the voice of all the electors of all the territory to be affected. Sand. & H. Dig. secs. 6986, 9984, 6987, 6992; 54 Ark., 134. The question is, what did the legislature intend; and this must be gathered from the whole act and other acts *in pari materia*. 35 Ark. 56. The statute of Missouri is essentially different from ours, and 50 Mo. 268 does not apply. 54 Pa. St. 89; 59 Ala. 235. The twelfth section of the act (Sand. & H. Dig. sec. 7108) is conclusive evidence that the first section was intended to make the territory annexed a part of the town district. The construction contended for appellants would leave a remnant of the old district without any organization, without any school house or school facilities, and rob it of its proportion of

school funds, and of all school advantages. No such
injustice was intended. 144 U. S. 47; 11 Ark. 44.

WOOD, J. This action was brought by the Attor-   1. Practice in
ney General in the name of the State, in lieu of quo war-   quo warranto.
ranto. Its object is to test the legality of the organiza-
tion of the town of Waldron in Scott county into a single
school district. The directors of the district, whose
existence is being questioned, were made defendants.

No valid objection can be urged either to the form
of the action or the parties litigant. Sand. & H. Dig.
secs. 7364–68; *State* v. *Cin. Gas Light & Coke Co.* 18
Ohio State, 262; *State* v. *Com. Bank*, 33 Miss. 474; 4 A.
& E. Enc. 294–303; *People* v. *Spring Valley*, 129 Ill. 169;
*State* v. *So. Pac. R. Co.* 24 Tex. 80.

The facts are well pleaded. The real question,   2. Organiza-
therefore, presented by the demurrer to the complaint is:   tion of single
school districts.
*Can an incorporated town establish itself into a single*
*school district, excluding all territory beyond the corpo-*
*rate limits, which, together with the town, had before*
*constituted the common school district?*

1. The action involves a construction of the follow-
ing sections: Sand. & H. Digest, Sec. 7088: Any
incorporated city or town in this State, including the
territory annexed thereto for school purposes, may be
organized into and established as a single school district
in the manner and with the powers hereinafter specified."

"Sec. 7089. Upon the written petition of twenty
voters of such city or town, praying that the sense of
the legal voters of said city or town may be taken on the
adoption of this act for the regulation and government
of the public schools therein, it shall be the duty of the
mayor of such city or town, within five days after the
presentation of such petitition, to designate and fix a
day, not less than seven nor more than fifteen days
distant, for holding an election in said city or town for

that purpose, and also for the election by ballot, at the same time, of a board of six school directors for said city or town."

"Sec. 7090. The mayor shall cause notice of said election to be given by posting notices in at least five public places in said city or town, and by one insertion in such newspapers as may be published in said city or town. The electors at said election shall have written or printed on their ballots, 'For the school law,' and those opposed thereto shall have written or printed on their ballot, 'Against the school law,' and, if a majority of said ballots cast at said election shall be 'For school law,' then, and in that case only, shall such city or town be deemed and held to be a single school district under and in pursuance of this act."   *   *

"Sec. 7106. The title of all real estate and other property belonging, for school purposes, to any city or town organized into a separate school district under this act shall vest, and hereby is vested, in said city or town, as a school district, and shall be under the management and control of the board of school directors for said district as fully and completely as other school property belonging to said district."

"Sec. 7107. All school districts formed under and governed by this act shall be known by the name of the city or town constituting the district, with the words 'School District of' prefixed thereto (as, for example, School District of Little Rock')."   *   *

"Sec. 7108. The board of school directors of any district organized under this act shall pay and discharge all debts and liabilities lawfully incurred by the several school districts existing under previous law and embraced in the district organized under this act."

"Sec. 7113.   *   * The county court shall annex contiguous territory to single school districts, under the provisions of this act, where a majority of the legal

voters of said territory and the board of directors of said single district shall ask, by petition, that the same shall be done."

What is the meaning of the phrase, "including the territory annexed thereto for school purposes," in the first section of the act of February 4, 1868? Prior to this act there was no law for the annexation of territory *to cities and towns for school purposes.* The legislature therefore used the phrase in a prospective, not retrospective, sense. It would have been an incongruous use of words to speak of "including territory thereto annexed for school purposes," when none in fact had been annexed. Common school districts were not formed by first designating some incorporated city or town, and then joining to it rural territory, nor *vice versa.* It could not be said that the *country* was annexed to the *city or town* for school purposes, any more than that the *city or town* was annexed to the *country* for such purposes. Both were components of the district. Reference was had to territory to be annexed under the act the legislature was then passing. The meaning was, when incorporated cities or towns were organized into single school districts under the act, such territory as should thereafter be annexed to them under the act was to be included in the districts so organized.

It is the duty of courts, where words of doubtful import are used in an act, or where there are seemingly repugnant provisions, to so construe them that, when considered in connection with all other acts *in pari materia*, they shall together constitute a consistent and harmonious whole. Every word and every phrase must be retained, and given its true meaning and proper weight, where it is possible to do so, and ascertain and carry out the purpose of the legislature. *Reynolds* v. *Holland*, 35 Ark. 56 ; *State* v. *Sewell*, 45 *id*. 387 ;

*McFarland* v. *State Bank*, 4 Ark. 410; Sedg. on Stat. & Con. Law, 19*b et seq.*; *State* v. *Watts*, 23 Ark. 304.

When the act is viewed as a whole, the purpose of the legislature to allow cities and towns to establish themselves into single school districts, independent of the rural territory which had also been part of the common school district, is clearly reflected. As expressed in its title, it is a "special act for the regulation of public schools *in cities and towns*." The election proceedings are put in motion and run entirely by voters and officers of the city or town. The outlying territory has no voice whatever in the organization. This is a cogent argument of an intention to exclude them; for, had it been intended to take in the whole common school district, most likely some provision would have been made for taking "the sense of the legal voters *of the district*," instead of the *city or town*. The directors elected upon the formation of the single school district are for the *city or town*, showing that the *city or town* constitutes the district when first organized. "If a majority of the ballots cast at said election shall be for school law, then, and in that case only, shall such *city or town* be deemed and held to be a single school district," again showing that the city or town is to constitute the district. The sense of the legal voters of the *city or town* is taken on the adoption of the act for the regulation and government of the schools therein in the city or town, not the city or town including outlying territory annexed thereto. Title to all real estate and other property which had formerly belonged to the city or town for school purposes is vested by the act in such city or town as a school district. And finally: "All school districts formed under and governed by this act shall be known by the name of the *city or town constituting the district*." Here, in express terms, it is said the city or town constitutes the district in its organiza-

tion. If the words, "including the territory annexed thereto for school purposes," are mandatory, and mean the rural portion of the common school district must be included in the single school district when organized, then they are in conflict with other sections of the act, in which numerous reference is made to the city or town alone. Such being the case, the latter should prevail, for they more clearly bespeak the legislative will. *Hackett City* v. *State*, 56 Ark. 133.

But sec. 7108, Sand. & H. Dig., is urged as supporting the contention of appellee. Under this section the board of directors of the single school district shall pay and discharge the debts and liabilities of such school districts as are embraced in the corporate limits of the city or town. Some cities or large towns may embrace several school districts, and, having absorbed them and their assets in the new organization, assume also their liabilities. But the difficulty comes where the corporate limits extend over only a portion of the territory of the common school district or districts. No express provision is made in this case to reimburse the remaining portion of the common school districts its *pro rata* share of whatever property or funds the single school district may have received from it. This, say the learned counsel, leads to such unjust results as to argue strongly against a separation of the urban and rural territory in the establishment of single school districts. But, on the other hand, it may be said that it would be equally unjust to cities and towns to burden their dense populations with the liabilities incident to maintaining schools in the sparsely settled rural territory; and furthermore, that it would be unjust to the country remote from the corporate limits to lay tribute upon it for the support of schools in the cities and towns which in many instances would be inconvenient, and in some perhaps impossible, for children in the country to attend. What-

ever may be said pro or con on this phase of the case amounts to no more than arguments for legislative action looking to an equitable adjustment where the city or town organized as a single school district does not embrace within its corporate limits the whole of the common school district of which it had formed a part.

A statute of Missouri provides "that any city, town, or village, *together with the territory thereto attached*, or hereafter to be attached for school purposes, may be organized into a single school district." Wagner's Statutes Mo. 1879, p. 1262, sec. 1. The Supreme Court of that State, in passing upon the question whether a city or town or village could organize into a single school district, without including the whole sub-district to which it belonged, said: "If the town or village could not organize without including the entire sub-district as it had previously existed, the main purpose of the law would be defeated. *State* v. *Searl*, 50 Mo. 268. It is also held in that State that it is optional with the city, town or village, being organized into a single school district, to include or exclude the territory attached for school purposes without any reference to the consent of the voters of such territory. *State* v. *Bd. of Education*, 53 Mo. 127; *State* v. *Bd. of Education*, 64 Mo. 53; *State* v. *Heiser*, 60 Mo. 540; *Henry* v. *Dulle*, 74 Mo. 443. But it should be said in this connection that Missouri has a statute, passed before these decisions were rendered, authorizing any board of education of any city, town or village to attach territory for school purposes to a certain distance beyond the corporate limits. Laws of Missouri, 1868, p. 164. And there was no provision in the Missouri law similar to ours providing for the annexation of contiguous territory. Sec. 7113, Sand. & H. Dig.

It is plain, under our statute, that the city or town can not take in the outlying contiguous territory, *nolens volens*.

Under the construction we have given the phrase in controversy, some instances of hardship may occur. The present case may be one. But the law is general in its application, and upon the whole we apprehend the act will be found to operate justly and advantageously to town and country alike affected by it. It cannot be turned from its course to meet exceptional cases of hardship. The decision we make is a precedent. Every incorporated city or town which has availed or desires to avail itself of the act is affected by the conclusion we reach. The evident purpose of the legislature was to confer upon cities and towns—centers of trade and population—educational facilities commensurate with their increasing necessities. Ample provision is made for annexing contiguous territory, and its annexation will naturally follow where it is mutually beneficial and desirable.

Reversed, with directions to sustain the demurrer.