SPECIAL SCHOOL DISTRICT No. 2 *v.* SPECIAL SCHOOL
DISTRICT OF TEXARKANA.

Opinion delivered February 16, 1914.

1. SCHOOL DISTRICTS—EXTENSION OF LIMITS OF TOWN—TERRITORY OF RURAL SCHOOL DISTRICT.—The act of 1909, No. 312, p. 931, which provides that the extension of the limits of a city or town shall operate as an extension of a special school district so as to include territory not theretofore included, applies so as to include territory embraced in a rural special school district. (Page 384.)

2. SCHOOL DISTRICTS—CHANGING BOUNDARIES—APPORTIONMENT OF INDEBTEDNESS.—The Legislature has the right to change the boundaries of school districts, and a statute is not rendered invalid because it fails to apportion the indebtedness of the old district. (Page 384.)

3. SCHOOL DISTRICTS—CONTROL BY LEGISLATURE—BOUNDARIES.—The Legislature has unrestricted power over the formation of school districts, and the making of changes in the boundaries thereof; and legislation on the subject is not affected by a failure to adjust the equities between the old and the new districts. (Page 386.)

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*William H. Arnold* and *Gustavus G. Pope,* for appellant.

The intention of the Legislature was, we think, that the proviso to the statute as amended should apply only where the city limits were extended so as to include a portion of the territory of a common school district.

After the passage of the act providing for the creation of rural special school districts there remained no necessity for such territory where it had already been created into a special school district adjacent to a city or town to be annexed to the urban special school district. 102 Ark. 414; 48 Ark. 307; 100 Ark. 175; 58 Ark. 116; 65 Ark. 529; 71 Ark. 559; 76 Ark. 309; 46 S. W. 1076; 82 S. W. 1082.

The language of a statute should be fairly and rationally interpreted so as to carry into effect the legislative intention; and if it is susceptible of two constructions, one of which will lead to an absurdity and the other not, the latter will be adopted.   91 Ark. 5.

A proviso to an act is strictly construed.   46 Ark. 310; 74 Ark. 302.

If a rural special school district adjacent to a city or town could be gradually absorbed by annexation from time to time, it would be impossible to sell its bonds or to borrow money by any other means, and thereby would be defeated one of the principal reasons of the Legislature for passing a general law extending the special school district system to territory outside of cities and towns.   102 Ark. 403.

*James D. Head,* for appellee.

1.   The acts 312 and 322 evidently progressed together through the Legislature and must have been intended by that body to mean what was stated therein. They stand *in pari materia.*

2.   School districts are creatures of the Legislature and may be changed at will.   No one, by bond or otherwise, acquires a vested right in having a district remain in the condition it was when the bonds were issued.   97 Ark. 72; 102 Ark. 403.   In the absence of statutory provision, an old district, although territory may have been taken therefrom, remains liable for its debts.   35 Cyc. 850; 65 N. E. 285; 68 N. W. 167; 110 N. W. 860.   See also 63 Ark. 433; 60 Ark. 124.

McCULLOCH, C. J.   The territory within the limits of the city. of Texarkana was formed into a single or special school district many years ago, pursuant to the statutes of this State; and in the year 1910 appellant, Special School District No. 2 of Miller County, was formed into a rural special school district pursuant to the act of the General Assembly of 1909 authorizing such district to be formed out of rural territory.   The south boundary line of Special School District No. 2 was then the north boundary line of the city of Texarkana, but since then part of the territory of Special School District No. 2 has been annexed to the city of Texarkana by appropriate orders of the county court.   This was done in February, 1912.   The voters of Special School District No. 2, at the regular school election in May, 1911, directed their district to borrow money with which to erect and equip necessary school buildings; but the funds were not borrowed nor the bonds issued until June, 1912, after the extension of the boundaries of the city of Texarkana to embrace part of the territory of Special School District No. 2.

The General Assembly of 1909 amended section 7668, Kirby's Digest, so as to read as follows:

"Any incorporated city or town in this State, including the territory annexed. thereto for school purposes, may be organized into and established as a single school district in the manner and with the powers hereinafter specified.   Provided, all school districts which are already organized and all hereafter organized under this act, shall include all the territory of the city or town, and when the limits of the city or town are extended so as to include territory not before within the school district, all of said new territory into the city or town become a part of special district of said city or town."   Acts 1909, page 931, Act 312.

That statute, and the one authorizing the formation of rural special school districts, were both approved by the Governor and went into force the same day.

The question involved in this case is, whether or not

the act of 1909, providing that the extension of limits of a city or town shall operate as an extension of a special school district so as to include territory not theretofore included, applies to the territory embraced in a rural special school district.

This is an action instituted by appellant, Special School District No. 2, challenging the extension of the territory of Special School District of Texarkana and seeking to restrain said district and the collector of taxes from including the taxes of certain residents and property owners of the disputed territory and from apportioning the taxes to Special School District of Texarkana.

The case was tried before the chancellor upon an agreed statement of facts, and a final decree was rendered dismissing the complaint for want of equity.

The argument of learned counsel for appellant is that the act of 1909, concerning the extension of boundaries of a special school district in a city or town must be construed to apply only to include territory of a common school district, and not to territory of an adjoining special school district. The principal reason stated by counsel as a basis for this contention is that this statute, being passed contemporaneously with the act authorizing the formation of rural special school districts, they should be construed together as being in harmony, and that there was no legislative intention to authorize the dismemberment of rural special school districts after being once formed. They argue that for this reason the Legislature is presumed to have referred only to territory of a common school district.

Another reason urged against a construction which would permit the inclusion of territory of a rural special school district is that there is no provision made in the statute for apportioning the indebtedness of the dismembered rural special school district, and that it is beyond the power of the lawmakers to separate the district without some provision for apportioning the liabilities.

These arguments are not without force and it must be confessed that, inasmuch as prior to the passage of

the two acts of 1909, there was no authority for forming rural special school districts, the members of the Legislature may have intended to apply the new acts to those conditions.

Still, we must interpret the statute according to what the language itself means, and an examination of it shows that it is broad enough to cover the territory of any outlying district. In fact, the act declares that "when the limits of the city or town are extended so as to include territory not before within the school district, all of said new territory in the city or town becomes a part of special district of said city or town." No exception is made as to the prior status of the added territory with respect to the kind of school district which embraced it. The two statutes, which were contemporaneously enacted by the Legislature and approved on the same day, should be construed *in pari materia,* and they can be harmonized by making the amendatory statute, in regard to the inclusion of territory over which the boundaries of the city are extended, to apply to lands embraced in a rural special school district as well as those embraced in a common school district.

The whole subject is undoubtedly within the power of the Legislature.

In a recent case we said:

"A school district is the creature of the Legislature or of some governmental agency named by the Legislature. The Legislature is primarily vested with the power to create school districts, and it may create or abolish a school district, or change the boundaries of those established for any reason that may be satisfactory to it." *Norton* v. *Lakeside Special School District,* 97 Ark. 71-73.

In a still later case, concerning the legislative power in the matter of school districts, we said:

"The legislative power in these respects is full and complete, and is conferred by the provisions of the Constitution. This power of the Legislature has been recognized many times by the court in determining ques-

tions relating to the formation of school districts, and the changing of the boundaries of districts already created." *School District of Hartford* v. *West Hartford Special School District,* 102 Ark. 261.

The exercise of this power is unrestricted, and the fact that the statute authorizes changes in the boundaries of districts without expressly providing a mode for apportioning the indebtedness of the old district does not impair the validity of the statute. That is the necessary effect of the decision of this court in the case of *Beavers* v. *State,* 60 Ark. 124, where the statute authorized the annexation to a special school district of adjoining territory, without there being an express provision for the apportionment of the assets and liabilities between the old district and the new. In the opinion it is said:

"No express provision is made in this case to reimburse the remaining portion of the common school district its *pro rata* share of whatever property or funds the single school district may have received from it. This, say the learned counsel, leads to such unjust results as to argue strongly against a separation of the urban and rural territory in the establishment of single school districts. * * * Whatever may be said *pro and con* on this phase of the case amounts to no more than arguments for legislative action looking to an equitable adjustment where the city or town organized as a single school district does not embrace within its corporate limits the whole of the common school district of which it had formed a part."

The idea there expressed is that the Legislature has the power to provide for the separation, even though it may fail to provide a mode for adjusting the equities between the two districts.

The same idea is expressed in a case cited on the brief of appellees. *Livingston* v. *Brookings,* 9 S. D. 102, 68 N. W. 167. In that case the court said:

"Without some express legislation imposing a liability upon the new districts, they can not be held liable at law for the debts of the old district, and certainly

there are in this case no equitable grounds alleged for imposing a liability for a debt of the old district upon the new. When the inhabitants of the new district ceased to receive benefits from the school building in the old district, and were compelled to provide new buildings for themselves, they, in justice, were entitled to be relieved from liabilities incurred by the old district for school buildings no longer of any use to them. As between themselves, therefore, there was no liability for which the new district could be held. But it is contended that it is a creditor who insists upon holding the new districts liable, and that it stands upon different grounds from that occupied by District No. 7, if it were seeking to recover in this action. Possibly, if it were shown that School District No. 7 had ceased to exist, or had practically been deprived of its available property, a creditor might, in equity, obtain relief against the new districts. * * * The creditor has no vested right, therefore, to have the territorial limits of such corporations remain unchanged, so long as the original corporation remains with a part of its original territory unimpaired, unless there are peculiar equitable grounds for proceedings against the new corporations, which do not appear in this case.''

The case of *Mount Pleasant v. Beckwith,* 100 U. S. 514, involved the rights of creditors of a corporation which had been merged by legislation into another corporation. Mr. Justice Clifford, speaking for the court, said:

''Text-writers concede almost unlimited power to the State Legislatures in respect to the division of towns and the alteration of their boundaries, but they all agree that in the exercise of these powers they can not defeat the rights of creditors nor impair the obligation of a valid contract.''

The court held that a creditor of the extinguished corporation had a remedy in equity against the corporations succeeding to its property and powers. Justices Miller, Field and Bradley recorded their dissent, as they were of the opinion that it required legislation to make a

legal obligation against the new corporation, and that in the absence of a legislative apportionment the creditor was without remedy.

Without undertaking to go into that question here, these cases afford precedents for holding that, where the Legislature has unrestricted power over the formation of school districts, and making changes in boundaries thereof, a failure to adjust the equities between old and new districts does not prevent the exercise of the power of making changes. If we were to declare the law otherwise, the act would be invalid even as to territory embraced within a common school district, for no provision is made in the statutes for apportioning the liabilities of a portion of any district thus taken. *Beavers* v. *State, supra.* The act would therefore fail altogether.

Whether there are creditors of Special School District No. 2 whose rights are impaired by this change, or whether the status of that district is such as to call for an adjustment of equities upon the complaint of a creditor or property owner, we need not determine, for no such equities are shown in the pleadings in this case. The bonded indebtedness of Special School District No. 2 was contracted after the extension of the boundaries of Special School District of Texarkana, and there are no other facts alleged in the complaint which would justify a court of equity in imposing liability upon Special School District of Texarkana. At any rate, the purpose of this litigation was not to adjust the equities between the two districts, but to test the right and power to add territory of Special School District No. 2 to the other district.

The chancellor was correct in his interpretation of the law governing that point, and the decree is therefore affirmed.