CHICAGO TITLE & TRUST COMPANY *v.* HAGLER SPECIAL
SCHOOL DISTRICT No. 27.

Opinion delivered November 26, 1928.

444

*Carmichael & Hendricks*, for appellant.

*Peyton D. Moncrief, A. G. Meehan, John W. Moncrief,* and *R. D. Rasco,* for appellee.

HART, C. J., (after stating the facts). After the transcript was filed in this court, counsel for appellants ascertained that the deposition of E. F. Horning, one of the bondholders, had been lost. The decree recites that the case was heard upon the pleadings and depositions of certain witnesses, specifically named, and among them is the name of E. F. Horning. Counsel for appellants applied to the chancery court from which this appeal was taken to supply the lost deposition. The chancery court granted their request, and, upon proper proof, the lost deposition was supplied and made a part of the record, and so certified by the clerk of the chancery court, under the direction of the chancellor.

It is earnestly insisted by counsel for appellees that no such power existed in the chancery court. We cannot agree with counsel in this contention. Section 8342 of Crawford & Moses' Digest provides that, whenever

any of the public records, including all records, papers and proceedings of every description, of record or on file in any court, or clerk's or recorder's office, or other public office of a county, shall be lost, or burned, or otherwise destroyed, the same may be reinstated and restored in the manner hereinafter provided. This court has held that, independent of statute, a court of general jurisdiction possesses the inherent power to substitute or restore its lost or destroyed records, and such power is not taken away by a statute unless a clear intention to do so appears in the body of the statute itself. *Fort Smith Automobile & Supply Co.* v. *Nedry,* 100 Ark. 485, 140 S. W. 711. So it will be seen from the language of the statute that it is merely declaratory of the common law.

The rule and the necessity for it were clearly stated by Mr. Justice Mitchell of the Supreme Court of Minnesota, in *Red River & Lake of the Woods Railroad Company* v. *Sture,* 20 N. W. 229, as follows:

"Independently of statute, and by virtue of its inherent powers, unaffected by lapse of time, every court has the right to replace its records when lost or destroyed by accident, negligence, or wantonness. If it had not this power, the rule that the record imports absolute verity, and is exclusively admissible evidence of matters properly incorporated in it, would work much mischief. The power which enables a court to supply an entire record after judgment extends to supplying any pleadings or papers in civil cases prior to judgment."

Under our practice, depositions, when filed, or oral evidence ordered to be reduced to writing and filed as depositions, become a part of the record in a chancery court. *Fletcher* v. *Simpson,* 144 Ark. 436, 222 S. W. 710; *Harmon* v. *Harmon,* 152 Ark. 129, 237 S. W. 1096; *McGraw* v. *Berry,* 152 Ark. 452, 238 S. W. 618; *C. A. Rees & Co.* v. *Pace,* 156 Ark. 473, 246 S. W. 491; *Rose* v. *Rose,* 9 Ark. 507; *Lemay* v. *Johnson,* 35 Ark. 225; and *Casteel* v. *Casteel,* 38 Ark. 477.

Of course, the court should proceed cautiously in the matter of restoring lost records, especially lost depositions; but this was done in the case at bar.

The chancellor held that the contract of the school district for the sale of the bonds was invalid, because the trustee named in the bonds and in the mortgage given to secure the same was a foreign corporation, which had not complied with our statute authorizing foreign corporations to do business in this State. We do not agree with this construction placed upon our statute prescribing upon what conditions foreign corporations may do business in this State. The language of the statute shows that it was intended to prevent a foreign corporation from doing business in this State, for which it was organized in another State, until it had procured the required certificate to do business in this State. In *Kephart* v. *People*, 28 Colo. 73, 62 Pac. 946, the Supreme Court of Colorado had under consideration a statute of that State which provided, among other things, that, if a foreign corporation fails to pay a prescribed fee to the Secretary of State, it shall not exercise any corporate powers or do any business in the State until the fee shall be paid; and it was held that the statute did not prevent an action by the foreign corporation to collect State warrants bought at its place of business in the State where such corporation was created. In *Bamberger* v. *Schoolfield*, 160 U. S. 149, 16 S. Ct. 225, it was held that a corporation of one State does not carry on business in another State by discounting a note sent it from the other State. In *Equitable Credit Co.* v. *Rogers*, 175 Ark. 205, 299 S. W. 747, it was held that a foreign corporation which has purchased in another State a note and contract of sale from a motor vehicle concern doing business within this State, in attempting to collect such note, was not doing business within the State.

The record does not show in what business the Chicago Title & Trust Company was engaged. In the bonds and in the mortgage involved in this suit, that corporation was named as trustee, and the bonds recite that

they are payable at its place of business in the city of Chicago, Illinois. The Chicago Title & Trust Company has no beneficiary interest whatever in the bonds, and, if it should go out of existence or refuse to act, the bond-holders would have the right to have a substituted trustee appointed; and we do not think the act of bringing suit by such corporation in this State to enforce the collection of the school bonds was such an exercise of corporate power as comes within the inhibition of the statute. It follows that the Chicago Title & Trust Company was not doing business in this State by merely bringing suit for the collection of the bonds sued on.

It is also insisted that the bonds sued on are invalid because the Legislatures of 1917 and of 1919 passed acts detaching portions of the special school district created by the Acts of 1915, and embraced these detached portions in new school districts, and in the acts creating the new districts recited that the Constitution of the State of Arkansas with regard to giving notice of the passage of special acts had not been complied with in act 314 of the Acts of 1915.

This declaration on the part of the Legislatures of 1917 and 1919 could have no other effect than to impair the obligation of the original contract under which the bonds were issued, in violation of the Constitution of this State and the Constitution of the United States.

In *Ennis Waterworks* v. *City of Ennis,* 233 U. S. 651, 34 S. Ct. 767, it was held that although, when the assertion is made that contract rights are impaired, it is the duty of the court to determine for itself whether or not there was a valid contract, in considering a contract arising from a State law, the Supreme Court of the United States will treat it as though there was embodied in its text the settled rule of law which existed in the State when the action relied upon was taken. In *Hill* v. *American Book Company,* 171 Ark. 427, 285 S. W. 20, it was held that where, by public law, officers are appointed to enter into a contract for the State, the law under

which they act is as much a part of the contract as if transcribed therein.

As we have already seen, Hagler Special School District No. 27 was created by a special act of the Legislature of 1915. The Legislature in passing the act, under our decisions, necessarily found that the notice required by the Constitution was given, and its action could not be reviewed by the courts. *Davis* v. *Gaines,* 48 Ark. 370, 3 S. W. 184; *Booe* v. *Road Imp. Dist.,* 141 Ark. 140, 216 S. W. 500; and *Gibson* v. *Spikes,* 143 Ark. 270, 220 S. W. 56.

The bonds in question in this suit were issued by the directors of Hagler Special School District pursuant to the power conferred upon them by the special act creating the district, and the terms of that act and the construction placed upon the provisions of the Constitution relating to its passage necessarily form a part of the contract for the issuance of the bonds. If the contract was valid and enforceable when entered into between the parties, it is perfectly plain that no act or declaration of subsequent Legislatures could alter its terms injuriously to the parties thereto without impairing the obligations of the contract.

We now come to the question whether the Legislature of 1917 and that of 1919 could detach material portions of territory from the original district, which issued the bonds, and thereby defeat or impair the rights of the purchasers of the bonds in the collection thereof. This could not be done. It is well settled that school districts are creatures of the Legislature, and that the Legislative power to create or abolish school districts, or change the boundaries thereof, is full and complete. *Special School District No. 2* v. *Special School Dist. of Texarkana,* 111 Ark. 379, 163 S. W. 1164; and *Kies* v. *Lowrey,* 199 U. S. 233, 26 S. Ct. 27. It is equally well settled, however, that it is a plain violation of our own Constitution as well as of the Constitution of the United States to enact a law which has the effect of impairing

the obligation of a contract. In *Louisiana* v. *New Orleans,* 102 U. S. 203, Mr. Justice Field said:

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. Whatever legislation lessens the efficiency of these means impairs the obligation. If it tends to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."

To the same effect see *Edwards* v. *Kearzey,* 96 U. S. 595, and *Seibert* v. *Lewis,* 122 U. S. 284, 7 S. Ct. 1190.

The territory comprising Hagler Special School District, and the revenue for school purposes derived from it at the time the bonds were issued and sold, constituted the principal protection of the bondholders. It was a material part of the contract that such creditors should have the right to have a school tax levied and collected as provided by law upon the whole territory embraced in the school district as it then existed. Of course, this court has recognized that the Legislature, in the exercise of its powers to change the boundaries of school districts, might make immaterial changes which could not in any sense impair the vested rights of the bondholders; but it could not take away material portions of the district, as was done in this case, and thereby seriously impair or affect injuriously the vested rights of the bondholders, who, as creditors of the district, had the right to have the territory remain as it was at the time the bonds were issued. Every case must be determined upon its own circumstances, but the record in this case shows that the severance of territory from the original district by the Legislature of 1917 and of 1919 seriously impaired the enforcement of the contract, and disturbed or tended to defeat the rights of the bondholders as creditors of the district. Therefore the acts are void in so far as the bondholders are concerned. As sustaining this view, under essentially a same state of facts, see *Midland Special School Dist. of Sebastian County* v. *Central Trust Co. of Illinois,* 1 Fed. Rep. (2d) 124.

The result of our views is that the chancellor erred in dismissing the complaint of appellants for want of equity. For that error the decree will be reversed, and the cause will be remanded with directions to the chancery court to render judgment in favor of the bondholders for the amount of the bonds sued on, and to foreclose their mortgage upon all of the property embodied in such mortgage in Hagler Special School District No. 27 as it existed at the time the bonds were issued and the mortgage executed, and for such other proceedings as may be necessary under the principles of equity and not inconsistent with this opinion. It is so ordered.