THE STATE *ex rel.* CHARLES C. BLAND, Petitioner, *v.* FRANCIS RODMAN, Secretary of State, Respondent.

1. *Mandamus — Secretary of State — Duty in counting up votes.*—The law relating to elections (Gen. Stat. 1865, ch. 2, § 32) does not vest in the secretary of State any discretion in opening and counting returns of votes. It requires him to perform the act. It is the law declared by this court, as well as by the uniform current of authority, that a county clerk or secretary of

The State ex rel. Bland v. Rodman.

State, in opening and casting up votes, acts ministerially, and not judicially. The matter of determining upon the legality of votes is a judicial function, to be passed upon before a tribunal competent to make an adjudication, where the parties can be heard.

2. *Secretary of State — Mandamus not issued, when.*—Mandamus will not be issued to compel the secretary of State to open and count up votes, where the office in contest is already filled by an officer holding under color of right.

## Petition for Mandamus.

*Miller*, and *Ewing & Smith*, for relator.

I. The only issue made by the pleadings in this case is, "Did the secretary of State, in the presence of the governor, open the returns and cast up the votes given for all the candidates for the office of judge of the eighteenth judicial circuit, and certify to the governor the name of the candidate receiving the highest number of votes for said office of judge of the said eighteenth judicial circuit at said general election?"

II. The abstract of the returns of the votes in the eighteenth judicial circuit, cast up by the respondent as certified by him, and his oral testimony, settle the fact that in his count he omitted to open and cast up the vote of Oregon and Shannon counties, although the abstract thereof was in the office of secretary of State at the very time the official casting up was made.

III. The secretary of State has not opened the returns as required by law. (Gen Stat. 1865, p. 64, § 32.)

IV. The secretary has omitted to perform a plain statutory duty, entirely ministerial in its character, and in such case *mandamus* is the remedy. (38 Mo. 540; 41 Mo. 32, 38.)

V. The evidence in this case shows no good cause (nor does the return) on the part of the respondent for not casting up the returns from all the counties in said eighteenth judicial circuit; and for this reason a peremptory writ of *mandamus* must issue, in conformity to the prayer of the petitioner. (35 Mo. 198.)

VI. The view of this case entertained and relied on by respondent recognizes in that functionary the concentration of all the powers of the registration officers, and the courts in contested election cases, with an absolute power to declare any man elected

for any office, in defiance of the popular will, lawfully expressed, and the laws of the State.

VII. The respondent's return does not admit that he did not cast up all the returns from the eighteenth judicial circuit, but avers that he did his duty. But the argument of the attorney-general is predicated upon the idea that the respondent omitted a public duty, but that it is now too late to compel its performance. The return and argument proceed upon entirely different grounds of defense. The case must be decided on the respondent's return, and not upon that of the attorney-general. This case must stand upon the petition, the return, answer, and proof. The proof is conclusive that the return is false. The respondent might have asked and perhaps obtained leave of court to amend his return, but he failed to do so. (10 Iowa, 65.) Electing to stand on his answer, admitted by himself to be false, will the court not compel him to do his duty? (See, generally, Moses on Mand. 210–22; 7 Iowa, 390; Marberry v. Madison, 1 Cr. 137.)

*H. B. Johnson,* attorney-general, for respondent.

I. *Mandamus* will not lie where the party has any other remedy. In this case his remedy is by *quo warranto,* or by contested election.

II. A *mandamus* cannot be issued to restore to a party an office, or a title to an office, when the office is already filled by a person holding by a color of right. (10 Mo. 117; Moses on Mand. 150.)

III. Courts will not grant a writ of *mandamus* when it would be fruitless to finally avail the party. (Moses on Mand. 58, 88, 89, 123; People v. Tremain, 29 Barb. 96; Howard v. Gage, 6 Mass. 462; Collins, Sec. of State, v. The State, 8 Ind. 345; Woodbury, Pet'r, v. County Commissioners, 35 Maine, 345; The People *ex rel.* Woodworth v. Burrows, 27 Barb. 89; The People v. Supervisors Greene County, 12 Barb. 217; Tapping on Mand. 67; 24 Barb. 166; 19 Md. 374; 20 Md. 461; Ingerson v. Berry, 14 Ohio St. 321.)

IV. The governor having commissioned another, who is now in possession of the office, a *mandamus* would be fruitless. A

The State ex rel, Bland v. Rodman.

*mandamus* will not lie against the governor, and petitioner could not take the office without a commission. ( State *ex rel.* Attorney-General v. James M. Poole, 41 Mo. 32 ; State *ex rel.* Attorney-General v. John S. Morrison, 41 Mo. 238. )

V. Petitions for writs of *mandamus* are addressed to the judicial discretion of the court. (40 Maine, 306 ; 7 Cush. 227. )

VI. A *mandamus* will not be granted to compel one power to perform an act which can only be performed by two.

WAGNER, Judge, delivered the opinion of the court.

The relator sets forth in his petition, in substance, that, being legally qualified, he was a candidate at the last general election for the office of circuit judge in the eighteenth judicial circuit, and as such received the highest number of qualified votes cast in said circuit for that office ; that the respondent, as secretary of State, refused, and still refuses, to count up the votes given for him, as prescribed by law, and that he is remediless ; and therefore prays this court to issue a peremptory writ of *mandamus* to compel that officer to act.

The respondent, in his answer, denies that the relator in said election received a majority of the qualified votes ; and further says that on the 23d day of December, 1868, in presence of the governor, he proceeded to open, and did open, and cast up the votes given for the candidates for the office of judge of the said eighteenth judicial circuit, and ascertained and determined that Elijah Perry received the highest number of legally qualified votes in the counties composing the said circuit; and that respondent afterward, on the 12th day of January, 1869, certified to the governor of the State that the said Perry received the highest number of votes for said office, whereupon the governor issued a commission to said Perry as judge of the eighteenth judicial circuit. The facts appear to be that, in the count of the vote, two counties included in the circuit — Shannon and Oregon — were omitted. The respondent states in his evidence that he refused to open the votes returned from these counties, but assigns no reason for his refusal. By the law in relation to elections (Gen. Stat. 1865, ch. 2, § 32) it is provided that

within fifty days after each general election, and as much sooner as the returns shall all have been made, the secretary of State, in the presence of the governor, shall proceed to open the returns and to cast up the votes given for all the candidates for any office, and shall certify to the governor, under his hand and the seal of the State, the candidates having the highest number of votes, and upon that certificate the governor shall issue commissions.

The law does not seem to have vested in the secretary any discretion in the premises. It requires him to perform the act of opening and counting the returns. It is the law declared by this court, as well as the general current of authority, that a county clerk or the secretary of State, in opening and casting up votes, acts ministerially, and not judicially. The matter of determining upon the legality of votes is a judicial function, to be passed upon before a tribunal competent to make an adjudication, where the parties interested can be heard. But, although from the case presented by the record I am of the opinion that the respondent erred, no peremptory writ can be issued.

It was decided by this court, in St. Louis County v. Sparks, 10 Mo. 117, that a *mandamus* could not be issued where the office was already filled by a person holding by color of right.

The object of granting the writ, says Tapping, is to prevent a failure of justice, and to provide an immediate and efficacious remedy. It follows, therefore, that it will not be granted, if, when granted, it would be nugatory. For the principle alone upon which the court exercises this prerogative power is that a strong necessity for such remedy exists, and that without it the ends of justice will be defeated. Hence, the court will refuse it, if it be manifest that it must be vain and fruitless, or useless, or cannot have a beneficial effect. (Tap. Mand. 67.) The authorities, both English and American, all concur in and enforce this view. The writ in the present case, if issued, would be wholly useless, and would be of no benefit to the relator. The commission has already been issued to Perry, and he is holding the office by color of right. The officer derives his title to the office by virtue of his election, and the commission is *prima facie* evidence only. The case has passed beyond any control of this

court, and the only redress the relator has, if he considers himself aggrieved, is by a legal contest made in pursuance of law.

It follows, therefore, that a peremptory writ must be denied. The other judges concur.