THE STATE ex rel. R. L. BUCK, Collector of Revenue of Scott County, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Division Two, February 23, 1915.

1. **SCHOOL DISTRICT: In Towns: Coterminous With City Limits.** The limits of a town or city school district need not be precisely coterminous with the city limits in order that a tax in excess of sixty-five cents on the one hundred dollars' valuation may be levied upon the property in the district for school purposes.

2. **SCHOOL TAX: In Excess of Sixty-five Cents in Town Districts: Constitutionality of Statute.** A school district which embraces a city of the fourth class, or an incorporated town or village, and also territory lying outside the city or village limits, known, by Sec. 10825, R. S. 1909, as a "town school district," may levy a school tax on all the property embraced therein in excess of sixty-five cents on the one hundred dollars' assessed valuation, when a majority of the voters who are taxpayers vote for said increase. The fact that said district embraces territory lying outside of the city limits does not make such excess invalid, nor bring the statute authorizing it (Sec. 10864, R. S. 1909) in conflict with the words of section 11 of article 10 of the Constitution, declaring that "the aforesaid annual rate for school purposes may be increased, in districts formed of cities and towns, to an amount not to exceed one dollar on the hundred dollars' valuation, and in other districts to an amount not to exceed sixty-five cents," when authorized by a majority of the voters who are taxpayers.

3. **SCHOOL DISTRICT: Formed of Cities and Towns: Meaning.** The words "formed of cities and towns" found in section 11 of article 10 of the Constitution of 1875, do not mean "formed exclusively of cities and towns," or a school district whose boundaries are precisely the same as those of the city or town. This is manifest from the language and decisions in force when the Constitution was adopted, which declared that a school district which embraced a city or town might embrace and include outside territory.

Appeal from Scott Circuit Court.—*Hon. Frank Kelly,*
Judge.

263Mo44

State ex rel. v. Railroad.

AFFIRMED.

W. F. Evans, Moses Whybark and A. P. Stewart for appellant.

(1) The right to levy not to exceed one dollar on the hundred dollars valuation, for school purposes, is limited to such school districts as are formed of cities and towns; and the Legislature exceeded such constitutional limitation when, in 1909, it passed the act authorizing a levy, for school purposes, of not exceeding one per. centum in "town school districts," that is, districts composed of a city, town or village, with attached territory outside of the boundaries of such city town or village. Such "town school districts," unless formed exclusively of a city or town, are limited to a levy for school purposes of not exceeding sixty-five cents on the hundred dollars valuation. Constitution, art. 10, sec. 11; Sec. 10825, R. S. 1909; Laws 1909, 770, 807, sec. 97. (2) Sec. 10825, R. S. 1909, in so far as it authorizes a levy for school purposes of not exceeding one per centum in "town school districts," without confining such right to districts formed of cities or towns, contravenes the provisions of section 11 of article 10 of the Constitution. A statute may be valid in part and void in part. State v. Addington, 12 Mo. App. 218; State v. Clark, 54 Mo. 17; State v. Bockstruck, 136 Mo. 353; State ex rel. v. Pond, 93 Mo. 635; State ex rel. v. Taylor, 224 Mo. 393; State ex rel. v. Gordon, 236 Mo. 142; State v. Distilling Co., 236 Mo. 219; Bank v. Ref. Co., 236 Mo. 407. (3) School districts Nos. 2, 3, 9, 27, 35 and 54, in Scott county, being each composed of cities or towns and adjacent rural territory, had no authority to levy in excess of sixty-five cents on the hundred dollars for school purposes; and the county court, in ascertaining the average rate levied for school purposes, had no authority to include the excess rates

levied by said districts over and above the constitutional limit of sixty-five cents. When the increase over forty cents is authorized by vote, such rate so increased is as much a limit prescribed by the Constitution as if inserted therein; and the rates levied in excess of such limit are invalid. Railroad v. Lamkin, 97 Mo. 503.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for respondent.

(1) Sec. 10825, R. S. 1909, authorizing a levy for school purposes of not exceeding one per centum in town school districts does not contravene the provisions of section 11 of article 10 of the Constitution, even though the town school districts has territory outside the corporate limits of the town or city included therein. State ex rel. v. Wilson, 45 Mo. 458; State ex rel. v. Searl, 50 Mo. 268; State ex rel. v. Board of Ed. Appleton City, 53 Mo. 127; State ex rel. v. Heiser, 60 Mo. 540; State ex rel. v. Board, 64 Mo. 53; State ex rel. v. Board of Education, 65 Mo. 587; State ex inf. v. Henderson, 145 Mo. 329; Art. 8, chap. 143, R. S. 1855; chap. 47, G. S. 1865; Art. 2, chap. 123, Wagner's Statutes, 1872; Sec. 1, p. 1241, 1262, Wagner's Statutes, 1872. (2) The single question presented is whether the classification in the Constitution of school districts into "districts formed of cities and towns" is to be limited, i. e., amended by adding the word "exclusively," which is not found in the Constitution, but which must be added by judicial construction. We submit this cannot be done. State ex rel. v. Gammon, 73 Mo. 422; Henry & Coatsworth Co. v. Evans, 97 Mo. 55; State ex rel. v. Corkins, 123 Mo. 67; Clark v. Railroad, 219 Mo. 534.

FARIS, P. J.—Suit by the collector for the aggregate amount of taxes above an alleged maximum

of sixty-five cents on the one hundred dollars valuation, levied in six school districts of Scott county, for school purposes. The collector had judgment and the defendant appealed.

The case is here upon an agreed statement of facts. As stated, six school districts are involved, but the facts are precisely similar as to each, and one may be taken in our statement as a type for all. The below excerpts from the agreed facts indicate plainly the point of controversy, viz:

"It is hereby agreed, by and between the parties to the above entitled cause, by their respective attorneys, that the evidence in this cause would show the following facts, which are agreed to be true:

"1. That the total value of the property of the defendant in Scott county, Missouri, subject to taxation for state, county, school and other purposes is $590,834.90. That there was assessed and levied against such property for the year 1911, for state, county and school taxes to the aggregate sum of $8929.19. That of the taxes so assessed and levied, all have been paid, except the sum of $131.34, of the taxes assessed for schools.

"2. That in school district number 2, Scott county, taxes for school purposes were assessed and levied at the rate of eighty-five cents on the one hundred dollars valuation, being twenty cents in excess of sixty-five cents on the one hundred dollars.

"3. That the taxes sued for herein, amounting to $131.34, are taxes for school purposes in the above numbered and described school district, in Scott county, Missouri, extended on said assessed valuation of $590,834.90, at the excess rate over and above the rate of sixty-five cents on the one hundred dollars in said school districts respectively.

"4. That none of said school districts, numbers 2, 3, 9, 27, 35 and 54 in Scott county, Missouri, aforesaid,

is formed exclusively of a city, or town, but each and every one of said school districts aforesaid, include territory outside the limits of cities and towns within the boundaries of said school districts, respectively; that each of said above numbered and described school districts was organized under and by virtue of the provisions of article 4, chapter 106, Revised Statutes 1909.''

Defendant by its answer properly raised the constitutional questions discussed in our opinion, and upon the submission of the case upon the agreed facts, offered a declaration of law that under the law and the facts the judgment should be for defendant. This declaration the court refused and defendant excepted.

We apprehend that the above facts, eked out by our own restatement of the contentions made, will make sufficiently clear the points discussed in the opinion.

## OPINION.

I. Defendant says in its brief that it no longer calls in question the constitutionality of section School 10864, but that the contention it urges is that Taxes. section 10825 is unconstitutional. The latter section simply empowers the county clerk to levy upon all property in a ''town school district,'' not to exceed (even when so authorized inferably by a vote), one per centum for school purposes. [Sec. 10825, R. S. 1909.]

Turning to section 10775, which defines, or classifies, the various kinds of public schools and public school districts in this State, we find that by statute a ''town school district'' is a district ''governed by six directors and in which is located any city of the fourth class, or any incorporated town or village.'' Clearly this is the identical district referred to in the agreed facts. So we need not concern ourselves with

the question of the right to organize, or the .constitutional validity of the organization of "a consolidated school district," merely for that it has two hundred or more children of school age and elects to avail itself of the provisions of section 10864, or of any other sort of districts, except town districts.

As a matter of course, if as allowed by section 10864, a town district may have attached to it for school purposes contiguous outlying territory beyond the city limits, and yet be allowed by section 11 of article 10 of the Constitution to vote a levy of taxes for school purposes in excess of sixty-five cents on the one hundred dollars' valuation, then section 10825 is not invalid. As we see it, therefore, the concrete question is whether a town district may be organized with contiguous territory beyond the town or city limits attached thereto, as provided in section 10864, and yet be permitted to levy taxes at the rate prescribed in the section, supra, of the Constitution for school districts "formed of cities and towns." [Sec. 11, art. 10, Cons. 1875.]

II. Reducing for the purposes of this discussion, the contention of appellant to its last analysis, does section 11 of article 10 of our Constitution, which fixes the maximum amount of taxes which may be levied upon each one hundred dollars' valuation at sixty-five cents, except "in districts formed of cities and towns," require that the limits of such city or town school district be precisely coterminous with the limits of the incorporated town or city, and unless school district limits are exactly coterminous with the town limits and no outside contiguous territory is attached, can the district legally levy more than sixty-five cents taxes on the one hundred dollars' valuation for school purposes? If it cannot, section 10864 is in a way unconstitutional, and in every aspect useless, since said section plainly provides for the attachment

of contiguous territory lying outside of the town or city limits, and since if such territory cannot be attached to a town or city school district, there is no taxing distinction or even any useful difference remaining as between such a district and the ordinary country school district.

Must then the limits of a town or city school district (called hereinafter for brevity a town district) be precisely coterminous with the city limits in order that more than sixty-five cents on the one hundred dollars' valuation may be levied therein for school purposes? If section 11 of article 10 of the Constitution means that no contiguous country territory may be attached, then section 10864 is invalid. The pertinent part of that section of the Constitution reads thus:

"For school purposes in districts *composed of cities which have one hundred thousand inhabitants or more the annual rate on property shall not exceed sixty cents on the hundred dollars' valuation and in other districts* forty cents on the hundred dollars' valuation: Provided, the aforesaid annual rates for school purposes may be increased, in districts formed of cities and towns, to an amount not to exceed one dollar on the hundred dollars' valuation, and in other districts to an amount not to exceed sixty-five cents on the hundred dollars' valuation, on the condition that a majority of the voters who are taxpayers, voting at an election held to decide the question, vote for said increase."

This section of the Constitution was amended at the general election in 1902, by striking out of the Constitution of 1875 the words "the annual rate on property shall not exceed," and by inserting at the place of and in lieu thereof the words which we italicise in the above excerpt from the Constitution. [Laws 1901, p. 266.]

It is manifest that section 10864 contemplates the attaching and grants the privilege of attaching to a town district contiguous territory outside the city limits. This is made apparent by the permission given in the first two lines thereof to erect a town district out of "any common school district *containing within its boundaries*" a platted city, town or village; as likewise by the provision in the closing sentence of said section which provides for the attaching to a town district of "such territory outside the corporate limits as may, by the creation of the new district, be cut off from the district or districts to which it originally belonged."

We are brought to a construction of the meaning of the words of the Constitution "formed of cities and towns." If this means "formed of cities and towns *exclusively*," then a district having within its boundaries a platted city, town or village, but likewise some contiguous territory outside of the city limits could levy (though it was under the statute, section 10864, supra, a town district, and though it called itself such), at most, but sixty-five cents taxes on the one hundred dollars' valuation for school purposes. Turning to the dictionary—the referee of disputes as to the usual and ordinary meaning of words—we find that in the sense used the verb "form" means "to go to make up; to be an element, or constituent of" [Century Dictionary]; "to be the essential or constiuent elements of; said of that out of which anything is formed or constituted, in whole or in part." [Webster's Int. Dic.] It is fundametnal that in construing the language of a Constitution the words used, unless they are technical, are to be understood in their usual and ordinary sense. [Cooley's Con. Lims. (7 Ed.) 92.]

Unless then we supply following the words "formed of cities and towns," some such word as

"wholly," or "entirely," or "exclusively," we are
not able to get from the definition in the dictionary
very much authority for the view that the use of the
participle "formed" connotes the idea of exclusive-
ness.  In facts these definitions point the weight of
the argument the other way.  Besides, section 11 of
article 10 came into the Constitution in 1875.  Town
and city districts, with attached outlying, contiguous
country territory beyond the city limits, were then in
existence.  [2 Wagner's Statutes (1872), sec. 1, p.
1262.]  The very first sentence of the above section
provided that "any city, town or village, the plat of
which has previously been duly filed and recorded in
the recorder's office of the county wherein the same
is situate, together with the territory attached, or
which shall hereafter be attached, to any such city,
town or village for school purposes, may be organized
into and established as a single school district."
[See also Sec. 1, p. 1241, 2 Wagner's Statutes (1872).]
A very similar provision was in the statute even earl-
ier.  [Sec. 1, p. 256, G. S. 1865.]  While being mind-
ful that by the express terms of our Constitution
(Schedule to Constitution, sec. 1) existing laws in
conflict with the provisions of our Constitution were
automatically repealed, no such conflict here exists
and no such necessity for such repeal is, as we have
seen, to be deduced from any language used by the
makers of the Constitution; but *per contra,* the lan-
guage used evinces a contrary intention.  We must
attribute to the makers of the Constitution knowledge
that a town or city school district then had, or was
then by law permitted to have, outlying contiguous ter-
ritory beyond the city limits attached to it "for
school purposes."  The query is pertinent then,
whether, if the Convention had in mind such limita-
tion of town and city school districts as to forever re-
quire the limits thereof to be coterminous with the

city limits, they would not have said so in no uncertain terms instead of using a word which as we have seen from its definition, is at most merely ambiguous. Much weight is lent to this view by the fact that section 1, page 1262, of Wagner's Statutes, supra, had been in 1873 and prior to the adoption of the Constitution of 1875, construed unequivocally as conferring the power upon a city school district to annex for school purposes contiguous territory beyond the city limits. [State ex rel. v. Board of Education of Appleton City, 53 Mo. 127.] In the above case WAGNER, J., who delivered the opinion of the court, said:

"The voters of the town, and also those inhabiting the outside district, participated in the election on the adoption of the law, and in the choice and selection of trustees; but it is now insisted that there was no authority for attaching or annexing any territory not included within the corporate limits. The statute above referred to declares that 'any city, town or village, the plat of which has previously been duly filed and recorded in the recorder's office of the county wherein the same is situate, together with the territory attached, or which shall hereafter be attached, to any such city, town or village for school purposes, may be organized into, and established as a single school district.' It would seem obvious enough from the reading of this statute, that it was not intended to confine the land to the territory attached to the town in its corporate capacity. The language is, 'the territory attached, or which shall hereafter be attached to any city, town or village, for school purposes. This clearly contemplates, that territory outside of the town limits may be taken in and attached for school purposes as convenience may require whenever the people interested may so desire. It then becomes dis-

annexed from the former school district, and constitutes attached territory in the sense of the law.''

To like effect in their general trend are also the cases of State ex rel. v. Heiser, 60 Mo. 540; Sharp v. Miller, 65 Mo. 53; State ex rel v. Mayview Bd. of Education, 65 Mo. 587; State ex rel. School District v. Bd. of Education of Appleton City, 64 Mo. 53; Henry v. Dulle, 74 Mo. 443. While several of the above cases were decided after the Constitution of 1875 took effect, yet it is fairly plain that they all dealt with fixed conditions arising prior to the adoption of the last Constitution. They yet clearly show the interpretation which the courts were putting upon the matter of attaching outlying territory to a city district for school purposes before, at the time of, and after the adoption of the Constitution.

The precise attack here made does not appear ever to have been made before. For almost fifty years, during the periods of protection of two constitutions, bench, bar and laymen seem to have acquiesced in the view that the attaching of country territory to a city school district for school purposes is permissible by the Constitution, and further that such school districts so composed may, on condition of an authorizing vote, levy as much as one hundred cents on the one hundred dollars' valuation for school purposes. This point was under discussion in the case of State ex inf. v. Henderson, 145 Mo. l. c. 336, where it was said as late as 1898, that:

''The industry and research of counsel have brought into juxtaposition the various statutes tending to show the policy of the State generally to be to make the school districts of cities coterminous with the limits of the several cities; still it is obvious that the exceptions to this general policy are just as marked, and that outlying country districts are attached to cities for school purposes, and whatever its

boundaries, a school district is a distinct corporate entity, performing its own peculiar function, independently of the municipal corporation within the same confines. We agree with the learned circuit judge who tried this cause that plaintiff's contention, that the existence of the city is a condition precedent to the formation of a school district of the kind now under consideration, is correct, but it does not follow that when organized it may not have territory outside of the city attached. While it is probably the correct view that all the territory within the city limits at the date of the organizaion must be included under the present law, it may also include other territory.''

Therefore, being mindful of the rule which forbids us to declare a statute unconstitutional unless it so appears to be beyond a reasonable doubt (State v. Baskowitz, 250 Mo. 82), we are constrained to hold that so much of the section of the statute which allows a town school district to attach or have attached to it outlying country territory for school purposes, pursuant to the provisions of said section, is not unconstitutional. It follows we think and we so hold, that a town school district as classified by the third sub-division of section 10775, and as such district is defined by section 10864, may lawfully levy as much as one hundred cents on the one hundred dollars valuation as taxes for school purposes. This view we reach without the necessity of falling back upon the *argumentum ab inconvenienti;* for the contrary view applied to the conditions as we know them now to exist would be utterly destructive, because of the fact that there is scarcely a town school district in the State outside of cities of 100,000 inhabitants or more, but which has some outlying contiguous territory attached to it, to the great mutual profit and convenience of both city and country.

Other considerations press themselves upon us, but we are thoroughly convinced that the view taken by the learned trial judge was correct, and that the judgment rendered by him should be affirmed. Let this be done.

*Walker* and *Brown, JJ.,* concur.