STATE EX·REL. ROBERT RICHARDSON v. H. G. C. BALDRY, Presiding
Judge, B. C. CANADY and MARTIN SKAGGS, Associate Judges, and
AUSTIN SNEAD, Clerk of the County Court of Newton County,
Appellants.—56 S. W. (2d) 67.

Division Two, December 31, 1932.*

*Hubbert & Rice* for appellants.

---

*NOTE: Opinion filed at the April Term, 1932, September 28, 1932; motion for rehearing filed; motion overruled at October Term, December 31, 1932.

1008

[redacted]

*Thomas M. Saxton* for respondent.

[redacted]

COOLEY, C.—Mandamus brought by relator Robert Richardson in the Circuit Court of Newton County to compel the judges of the county court of said county to reconvene and to canvass and count the votes of the "mayor and board of trustees of the Town of Ritchey" cast or attempted to be cast at a certain meeting held for the purpose of appointing a commissioner for the Granby Special Road District and to instruct the county clerk to issue a certificate to relator showing him appointed as such commissioner. Judgment was for the relator and the respondents below have appealed. The appeal was allowed to the Springfield Court of Appeals which court transferred the cause to this court because it deemed that the action involved title to the office of commissioner and that it was therefore without jurisdiction. We shall herein refer to the parties as relator and respondents respectively as they were designated below in the pleadings.

Granby Special Road District was organized prior to 1926 (the date of organization not being shown), pursuant to what is now

Article 9 of Chapter 42, Revised Statutes 1929, sections 8024 et seq. As originally organized it included the city of Granby, a city of the fourth class having a mayor and a board of four aldermen, but did not include the village of Ritchey. About 1926 or 1927, its boundaries were extended as permitted by statute, which extension included the village of Ritchey. The district as extended is wholly within Newton County.

The statute, Section 8026, Revised Statutes 1929, provides that "the mayor and members of the city council of any city or town within any special road district thus organized, together with members of the county court . . . in which said district is located, at a meeting to be held in the county court room, at which meeting the presiding judge of the county court shall preside and the county clerk shall act as clerk," within two weeks after organization of the district shall, by order of record to be kept by the county clerk, "appoint" a board of three commissioners for the district, designating one to serve for three years, one for two years and one for one year, "and in February every year thereafter one commissioner shall be appointed as above specified, to serve for three years." Such commissioners, before entering upon the discharge of their duties, must take an oath of office to be administered by the county clerk.

This proceeding involves the appointment of a commissioner for said district in 1931. On February 2, 1931, the respondents, judges and clerk of the county court, and three members of the Board of Aldermen of the City of Granby met for the purpose of "electing" or appointing a road commissioner. As stipulated at the trial there were also present five named men "who represented themselves as being members of the board of trustees of the village of Ritchey." Their right to vote on the appointment of a commissioner was challenged at the meeting, though on what grounds does not clearly appear. In this court it is challenged on the grounds that the village of Ritchey was never legally incorporated, for which reason the five men had no official status as trustees; that if they had such official status they were not entitled to vote because said village was not in the district as originally organized; and perhaps, also, though this is not quite clear, on the ground that under Section 8026, supra, village trustees are not entitled to vote on the appointment of a special road district commissioner in any event. Without pausing here to determine these questions we shall for convenience refer to these five men as trustees of the village.

Relator and one J. R. Underwood were proposed as candidates for commissioner, both being qualified. Ballots were prepared and submitted by all present claiming the right to vote, viz., the three members of the county court, the three aldermen of the city of Granby

and the five trustees of the village of Ritchey. No question was or is raised as to the right of the county judges and aldermen of the city of Granby to vote. Those six votes were concededly valid and were accepted and counted. It was stipulated at the trial:

". . . that said H. G. C. Baldry, chairman of said meeting, upon the question of who had a right to vote in said meeting, ruled that the persons present representing themselves as being members of the Board of Trustees of the Village of Ritchey, Missouri, were not entitled to a vote for such Commissioner; that thereafter, upon a vote being taken J. R. Underwood received four votes, and the relator, Robert Richardson, received two votes; and H. G. C. Baldry, the chairman, thereupon declared that J. R. Underwood had been elected as Commissioner of the Granby Special Road District of Newton County for a term of three years, and instructed the clerk of said court to issue a commission to said J. R. Underwood; that the parties representing themselves as being members of the Board of Trustees of the Village of Ritchey protested against the action of the chairman in not allowing their votes to be cast and counted, and that the entire five members of the Board of Trustees of the Village of Ritchey desired to cast their votes for relator.

"It is further admitted that, thereafterwards, on the 3rd day of February, 1931, J. R. Underwood, who had been declared elected as such Commissioner of the Granby Special Road District, presented himself to the office of the county clerk, took the oath of office as prescribed by law, and was issued a commission as Commissioner of the Granby Special Road District for a term of three years."

Upon receiving his commission and taking the oath Mr. Underwood assumed the office of commissioner and has since been in possession and performing the functions thereof. The pleadings in effect so admit. Respondents' return to the alternative writ alleges:

"That since receiving such commission as Commissioner of the Granby Special Road District of Newton County, Missouri, said J. R. Underwood has been performing the duties of Commissioner for such Special Road District as prescribed by law."

That allegation was not denied by reply or other pleading. Respondents' evidence tended to sustain it and there was no countervailing evidence. There was no allegation in the pleadings or any attempt to show by evidence that in ruling that the village trustees were not entitled to vote and in rejecting their proffered ballots Judge BALDRY, as chairman of the meeting, or any of the respondents acted corruptly, capriciously or with intent to disregard their duty and the law or otherwise than in good faith. Neither the present trustees nor any former trustees of the village of Ritchey had at any prior meeting offered or claimed the right to vote upon the appointment of a commissioner for the road district.

The court made no specific finding of facts. It merely found generally "the issues formed in favor of said relator" and that the respondents had not shown any just cause why a writ of mandamus should not issue as prayed and adjudged as follows:

"Whereupon, it is, by the court, considered and adjudged that a writ of mandamus be issued to said Presiding Judge and Associate Judges of the County Court of Newton County, Missouri, and to Austin Snead, clerk of said court, directing them to reconvene for the purpose of electing a Road Commissioner for the Granby Special Road District, organizing as provided by Section 8026 of the Revised Statutes of the State of Missouri of 1929, and, together with the Mayor and Board of Aldermen of the City of Granby and with the Mayor and Board of Trustees of the Town of Ritchey, canvass the vote as cast by the members present at said meeting and to issue a certificate of election to the relator, he receiving the largest number of votes."

Several questions are urged in briefs of counsel but in the view we take of the case it is necessary to consider only one, viz., whether or not mandamus is a proper or permissible action to obtain the relief sought. We are of the opinion that on the facts shown such action cannot be maintained.

This suit was instituted February 5, 1931, three days after the meeting for the appointment of commissioner had been held, had transacted its business and adjourned. Underwood, who is not a party to this proceeding, had been appointed commissioner, had qualified and assumed the duties of the office and was in possession thereof as at least *de facto* commissioner under color of right when the suit was filed, claiming title thereto by virtue of his appointment made February 2. By this suit relator seeks in effect to have himself adjudged to be entitled to the office. It is not merely a proceeding to compel performance of their duties by canvassers whose duties are purely ministerial, such as canvassing votes certified to them by election officials and certifying the result of such canvass, and who are not authorized to go behind the returns or to determine the validity of the votes which have been received and certified to them by the election officials, as was the case on the facts in judgment in State ex inf. v. Moss, 187 Mo. App. 151, 172 S. W. 1180, cited by relator. In this case the votes which relator seeks to have respondents compelled to count had been (in good faith so far as the record shows) rejected by the officials in charge of the meeting on the ground that the persons offering to cast them were not entitled to vote. Whether or not Judge BALDRY alone, as chairman of the meeting, was authorized to determine that question, such question when it arose had to be determined at the meeting. It does not appear that any of those present objected to the chairman alone ruling on the question.

1012

The trustees protested against the ruling that they were not entitled to vote but apparently not against the chairman's authority to rule on the question. Be that as it may, the determination of such question cannot be said to be a purely ministerial function. It has been held that election officials in determining the qualifications of persons presenting themselves as voters act in a quasi-judicial capacity. [State ex rel. Wahl et al. v. Speer et al., 284 Mo. 45, 59, 223 S. W. 655, 659; Pike v. Megoun et al., 44 Mo. 491; McGowan v. Gardner, 186 Mo. App. 484, 172 S. W. 408; Blake v. Brothers, 79 Conn. 676, 66 Atl. 501, 11 L. R. A. (N. S.) 501.] It is well established that while mandamus will lie to compel an inferior tribunal, charged with duties the discharge of which requires the exercise of judgment or discretion, *to act,* the court will not by such proceeding attempt to control such discretionary action or direct *how* the inferior tribunal shall act. [State ex rel. Meyer v. Woodbury et al., 321 Mo. 275, 10 S. W. (2d) 524; 38 C. J. p. 725 et seq., secs. 12 and 13.]

In this case, as suggested above, the writ was sought not merely to command the ministerial duty of canvassing or counting votes cast and which had been accepted by the officials authorized to receive them and with the validity of which votes the persons sought to be mandamused had no concern, but to command the *acceptance* and counting by respondents of votes which they had rejected in the belief that the persons offering to cast such votes were not entitled to vote. In the determination of that question respondents may have been and we think from the record herein doubtless were required to inquire into and pass upon questions of fact as well as of law, in other words, to exercise their judgment. To illustrate, it is here contended by the respondents that the village of Ritchey was not incorporated and for that and other reasons above mentioned the alleged trustees were not entitled to vote. On the other hand, relator, without challenging respondents' right to assail the corporate existence of the village in this proceeding, contends that his evidence shows it to have been legally incorporated and further, that if it was not it had functioned as a corporation for such time that its status as a corporation cannot now be disputed, assertions denied by respondents. Whatever may be the merits of those contentions and whether or not cognizable in this action they serve to illustrate that respondents, in rejecting the trustees' proffered votes, were not acting in a purely ministerial capacity. In order to issue the mandatory writ prayed for herein the court would have to determine, as the circuit court in effect attempted to do, that the persons claiming to be trustees of the village of Ritchey were in fact such and were entitled to vote and that relator was legally appointed commissioner, which would necessarily mean that Underwood was not legally appointed and was not commissioner.

■ It appears to us that the judgment sought and rendered necessarily involves an adjudication of the title to the office and that too in a proceeding to which the *de facto* officer is not a party. Mandamus is not the proper action in which to try title to office. In State ex rel. Gallagher v. Kansas City et al., 319 Mo. 705, 731, 7 S. W. (2d) 357, 369, 59 A. L. R. 95, this court en banc said:

". . . if there is in possession of the office a *de facto* officer claiming title to the office, under color of title (as we have in the instant case), then mandamus is not a proper remedy. We have but two ways of trying title to office in Missouri, i. e., (1) election contests as prescribed by statute; and (2) *quo warranto*. In each the *de facto* officer is a party."

To the same effect, see State ex rel. Cannon v. May, 106 Mo. 488, 508, 17 S. W. 660. That *quo warranto* is a proper proceeding in which to try title to office, see State ex inf. Holt, Pros. Atty., ex rel. Jones v. Meyer, 321 Mo. 858, 12 S. W. (2d) 489, a case involving title to the office of commissioner of a special road district.

■ Mandamus will not lie to compel the admission to office of one claiming title thereto when the office is at the time filled by a *de facto* officer claiming under color of title. [State ex rel. Gallagher v. Kansas City, supra, and authorities cited.]

In State ex rel. Bland v. Rodman, 43 Mo. 256, mandamus was sought to compel the Secretary of State to count certain votes for the relator as candidate for circuit judge, said Secretary of State having failed to count the votes of two counties which had been certified to him. When the mandamus suit was begun a commission had already been issued to another who was then in possession of the office. It was held that the Secretary of State had erred in not counting the votes in question but that mandamus would not lie because the office was already filled by a person holding by color of right; that mandamus will not be granted if, when granted, it would be nugatory, and that in the case then before the court it would have been nugatory since a commission had already been issued to another person and such other person was holding office by color of right.

For the same reasons the writ, if granted in the instant case, so far at least as concerns the "certificate of election" sought by relator and ordered by the circuit court, would be nugatory. The statute makes no provision for the issuance of a commission or certificate to the commissioner appointed. The appointment is to be "by order of record to be kept by the county clerk." A commission or certificate if issued could be at most but *prima facie* evidence of title to the office. [State ex rel. Bland v. Rodman, supra.] Underwood would still be in the office holding under color of title, his appointment shown by the county clerk's records and also having a commission. His claim of title cannot be foreclosed in this action to which he is not a party. Another action to which he is a party would be necessary.

■ There is an additional reason why this proceeding cannot be maintained, viz., respondents had acted and had performed the duty of appointing a commissioner before the suit was brought. If a peremptory writ should issue herein its effect would be to compel respondents to rescind the action taken and to take different action. In State ex rel. Hagerman v. Drabelle et al. (Mo.), 191 S. W. 691, 694, this court en banc stated the general rule to be that "mandamus will not lie when the officer sought to be mandamused has, in good faith, performed a duty prior to the institution of the suit requiring him to act, provided that in such performance he was acting within his jurisdiction, and it was not the result of some clerical error." To the same effect and also holding that mandamus cannot properly be invoked "to include the remedies afforded by an election contest," see State ex rel. Nick v. Edwards et al. (Mo.), 260 S. W. 454.

In State ex rel. Hagerman v. Drabelle, supra, the Republican Central Committee of St. Louis had selected one Goldstein as Republican candidate for the office of circuit clerk to be voted for at the ensuing general election and had issued to him a certificate as provided by law. The board of election commissioners, acting in good faith, accepted the certificate and announced its intention to place Goldstein's name on the Republican ticket as candidate for said office. Mandamus was brought against the board of election commissioners to compel it to rescind its action in accepting Goldstein's certificate of nomination and to command it to desist from placing his name on the ballot. The court pointed out that the board had, in good faith, already acted and after reviewing authorities stated the rule as above quoted.

In support of his contention that mandamus will lie in this case notwithstanding the fact that respondents had already acted, relator relies chiefly on State ex rel. Kelleher et al. v. Board of President and Directors of St. Louis Public Schools et al., 134 Mo. 296, 35 S. W. 617. In that case the court held that the respondents had so grossly and palpably abused the discretion confided to them that it amounted to a virtual refusal to perform the duty of holding an impartial election and that in contemplation of law they had refused to act at all.

In State ex rel. v. Drabelle, supra, the court said that there was an exception to the general rule we have quoted above, viz.:

"That where the law is clear and unambiguous and the facts are undisputed, mandamus will lie where the officer sought to be mandamused has 'clearly manifested a determination to disobey the law.' In such a case the court will issue the writ and even undo the wrong committed by the officer and compel him to act according to law."

It then distinguished the case of State ex rel. v. Public Schools, supra, thus:

"This exception is clearly explained in the case of State ex rel. v. Public Schools, 134 Mo. 296, 35 S. W. 617, 56 Am. St. Rep. 503, where the statute required that the judges and clerks of an election should be bi-partisan, to be selected by the board of public schools of the city of St. Louis, and, in flagrant violation of the law and facts, it knowingly and intentionally appointed none but Republican judges and clerks. After the appointments were made mandamus proceedings were brought against the board to compel it to rescind the appointments made and to make appointments in conformity to the mandate of the statute. In that case this court held, and properly so, that mandamus would lie, and issued its permanent writ, compelling the board to make the appointments as the statute required."

The case of State ex rel. v. Public Schools, supra, does not apply to the facts of the instant case. Other authorities are cited by relator dealing with mandamus as a proper proceeding to compel performance of purely ministerial duties. It is not disputed that it is an appropriate remedy in such cases.

For the reasons indicated we think it clear that mandamus is not the proper action and cannot be maintained on the facts shown. It results that the judgment must be and it is reversed and the cause remanded with directions to the circuit court to quash the alternative writ of mandamus and dismiss the proceeding. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.