STATE ex rel. KEYSTONE LAUNDRY AND DRY CLEANERS, INC., Plaza Cleaners and Laundry, American Laundry Company, Toy A. Cribbs, Mahlen Henry, Joseph Humphrey, James Thomas, Burl Garvin, Nolan Sherwood, Gale Ludwig, Frank Meyers and S. Woofcool, Relators,

v.

William A. McDONNELL, Charles E. Curry, J. Carl Anderson, Everett Van Matre, Albert J. Ahner, Robert Dorsey, as members of the Commerce and Industrial Development Commission, and Henry C. Maddox, Director of Commerce and Industrial Development, Respondents.

No. 52756.

Supreme Court of Missouri, Division No. 2.

March 11, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied April 8, 1968.

Edgar M. Eagan, Jefferson City, for appellants.

Norman H. Anderson, Atty. Gen., Arnold Brannock, Asst. Atty. Gen., Jefferson City, for respondents.

EAGER, Judge.

The relators filed a petition for mandamus in the Circuit Court of Cole County in September, 1966, and the alternative writ was issued. Subsequently the cause was dismissed, after a hearing upon a combined return and motion to dismiss; the grounds alleged in that motion were (1) that such a proceeding would not lie to compel the performance of acts which were discretionary in nature; (2) that respondents had already acted and had no power to rescind their action; (3) that the petition did not state a claim upon which relief could be granted. It was further alleged, as a return to the alternative writ, that the controverted project was within the purview of §§ 71.790–71.850, RSMo., 1965 Supp., V.A.M.S. The order and judgment of the Court specified that the relators had failed to state a claim upon which relief could be granted; it also contained a general finding in favor of the respondents. Following an unsuccessful after-trial motion, relators appealed. In this situation we consider the pleadings and the judgment. For the sake of clarity, however, we note here that the case arose out of the attempt of the City of Joplin to issue and sell revenue bonds in the amount of $260,000 under Art. 6, § 27 of our constitution, V.A.M.S., and the statutes cited above, for the purpose of acquiring a site,

constructing a building, and purchasing equipment for a commercial laundry, to be leased to Industrial Linens, Inc. of Columbia, Missouri.

The petition alleged in substance: that certain of the relators are owners and operators of laundries in Joplin and that they, as a class, fairly represent the other commercial laundries there; that the other nine relators are citizens, taxpayers and residents of Joplin; that the respondents constitute the officers and members of the Industrial Development Commission (see § 255.061, 1967 Supp.), which controls the Division of Commerce and Industrial Development of the State of Missouri (respondent Maddox is the Director of the Division); that it is a function of the Division to approve or disapprove proposals of municipalities for industrial development under the statutes cited above; that the Council of the City of Joplin did, on February 7, 1966, approve a proposed project to be financed with revenue bonds in the amount of $260,000 for the acquisition of a site, the construction of a building, and the purchase and installation of laundry equipment, to be leased to Industrial Linens, Inc. of Columbia, Missouri, "for the operation of a laundry and rental service of linens, treated cloths, and treated entrance mats, and a full line of laundry service to the public, including industries." The petition further alleged: that the City applied to respondents for approval of the project, describing it in part as a plant for "the rendering of a full line of specialized laundry service required by industries * * *"; that relators requested the respondents not to approve the project, but that they did "unlawfully" approve it and so advised the City; that the project constitutes a commercial laundry, "A SERVICE BUSINESS," and does not constitute *"manufacturing and industrial development as provided by Art. VI, Sec. 27 of the Constitution of Mo., or for the* construction of an industrial plant as defined by Section 71.790(3), Laws 1963, * * *"; that respondents had no jurisdiction, power or

statutory authority to approve the project, but that it was their duty to disapprove it; that the issuance of a notice of disapproval was a ministerial duty, and that their failure to so act was a breach of a public trust and duty; that the unlawful approval of the project is vital to all service businesses in the state and affects the historical and economic classifications of businesses; that relators had no other complete and adequate remedy, that certain of the relators had substantial investments in their commercial laundries in that trade area, and that the completion of this proposed project would give to the lessee substantial tax and interest advantages and consequently a competitive advantage over such relators. Relators prayed that a writ of mandamus issue commanding respondents to revoke their approval of the project, and for such other relief as might be proper.

We have already reviewed the motion to dismiss and the judgment of the trial court. The constitutional provision in question, Art. 6, § 27 (as amended in 1960 and 1965) is in part as follows: "Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may issue and sell its negotiable interest bearing revenue bonds for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any of the following: * * * (2) plants to be leased or otherwise disposed of pursuant to law to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery; * * *."

The applicable statutes, originally §§ 71.-790–71.850, are now §§ 100.010–100.200. They define a "project" in § 100.010 as: "(5) 'Project for industrial development' or 'project', the purchase, construction, extension and improvement of industrial plants, including the real estate either within or without the limits of such municipalities, buildings, fixtures, and machinery; * *." Section 100.050 requires that the plan for any such project for *industrial development*

shall first be approved by the governing body of the municipality and then submitted to the Division of Commerce and Industrial Development (emphasis is ours); Section 100.060 provides that the Division shall approve when it finds that: the project will further economic development and employment and the general welfare of the municipality and the state, and that it is economically feasible. Section 100.070 provides that the Division shall notify the municipality of its approval or disapproval. Thereupon, under the following sections, the municipality may proceed to give its final approval and carry out the project under the requirements of those sections. It is specifically provided, however, that "No project shall be carried out by the municipality without the prior approval of the division of commerce and industrial development * * *." Section 100.080.

It may thus be seen that the key requirements, insofar as the nature of such proposals is concerned, are that they be plants "for manufacturing and industrial development purposes" (constitution), and an "industrial plant" (§ 100.010). Respondents concede here that this particular project would not constitute a manufacturing plant and that the issue is whether or not it would be an "industrial plant." This Court has jurisdiction for the reason that a construction of Art. 6, § 27 is involved and in fact is required. The contention of respondents to the contrary is denied without further discussion.

■ The first point of substance which we must consider is whether the writ of mandamus will lie in these circumstances. It is true, as respondents insist, (1) that the writ will not ordinarily issue to control the discretion of a court or an administrative body acting within its jurisdiction. State ex rel. Schulz v. Fogerty, Mo.App., 195 S.W.2d 908; State ex rel. Richardson v. Baldry, 331 Mo. 1006, 56 S.W.2d 67; State ex rel. Hand v. Bilyeu, Mo.App., 346 S.W.2d 221 (approved by this court at 351 S.W.2d 457, loc. cit. 460). Respondents

also contend, (2) that the writ may not issue here because their action has been completed and they may not be required now to rescind it, citing State ex rel. Richardson, supra; State ex rel. Hagerman v. Drabelle, Mo., 191 S.W. 691, and State ex rel. Nick v. Edwards, Mo., 260 S.W. 454. We first consider (1) above. An exception to the general rule is recognized where the administrative board (or court) has acted unlawfully or wholly outside its jurisdiction or authority or has exceeded its jurisdiction, and also where it has abused whatever discretion may have been vested in it. State ex rel. Knight Oil Co. v. Vardeman, Banc, Mo., 409 S.W.2d 672; State ex rel. Hagerman, supra, at 191 S.W. loc. cit. 694; State ex rel. Schulz, supra, at 195 S.W.2d loc. cit. 911; State ex rel. Lovell v. Tinsley, Mo.App., 236 S.W.2d 24; State ex rel. Kelleher v. Board of President & Directors of St. Louis Public Schools, 134 Mo. 296, 35 S.W. 617; State ex rel. Richardson, supra; 55 C.J.S. Mandamus § 63 c, p. 103–104. "If, *as a matter of law*," the action of respondents is wrong, then they have abused any discretion which they may have had. State ex rel. Knight Oil Co., supra, at 409 S.W.2d loc. cit. 675. The determination of questions of law is reserved to the courts, and such matters may not be decided by an administrative board. State ex rel. Hand, supra; State ex rel. Folkers v. Welsch, 235 Mo.App. 15, 124 S.W.2d 636.

■ As to (2) above, namely, that the writ may not issue after respondents have acted, we also find in the cases instances where the writ has been so issued. In the recent case of State ex rel. Knight Oil Co., supra, the trial court had ordered the joinder of a party, and this court held that the order was improper as a matter of law. Our peremptory writ issued, commanding the trial court "to vacate its order," among other directions. In State ex rel. Hand v. Bilyeu, Mo.App., 346 S.W.2d 221 (approved, as already noted, at 351 S.W.2d 457) the Court said, at loc. cit. 228: "Mandamus is applicable to compel the doing of that which is right * * * though it

may sometimes have the effect of rescinding that which was wrong. And where acts of public officers in respect to public rights are involved, the good faith and solemn belief of the officer should not be concerned where there has been an abuse of discretion accomplished by disobedience of the law. To hold otherwise would be to surrender the functions of the judiciary to the administrative." See also: State ex rel. Lefholz v. McCracken, 231 Mo.App. 870, 95 S.W.2d 1239; State ex rel. Kelleher v. Board of President & Directors of St. Louis Public Schools, 134 Mo. 296, 35 S.W. 617. In State ex rel. Lovell v. Tinsley, Mo. App., 236 S.W.2d 24, the Court said at loc. cit. 27: "Mandamus is a writ which lies 'to compel the undoing of a thing wrongfully and improperly done, when such wrongfully and improperly done thing precludes or prevents rights to which one is under the law entitled.' Mahon v. Scearce, Mo.App., 228 S.W.2d 384, loc. cit. 389."

It is true that ordinarily mandamus does not lie where other remedies are available. But such other remedies must be adequate and equally efficient. State ex rel. Lefholz, supra; State ex rel. Knisely v. Holtcamp, 266 Mo. 347, 181 S.W. 1007; Perkins v. Burks, 336 Mo. 248, 78 S.W.2d 845, 848; State ex rel. Marcum v. Sappington, Mo.App., 261 S.W.2d 385. And the discretion of the court with regard to the issuance of the writ is sometimes influenced by the "public importance" of the matter. Perkins, supra, 78 S.W.2d at loc. cit. 849. We shall keep the foregoing principles in mind as we proceed in our discussion and reach our own conclusions.

We must next determine whether the proposed project is one fairly within the contemplation of our constitution and statutes. As already indicated, the respondents assert that the laundry constitutes an "industrial plant"; technically, the constitution requires that it be a plant for "industrial development purposes." Counsel for respondents rely upon definitions, and upon certain Pennsylvania cases which we shall

discuss. We note, first, that the particular statutes under which respondents acted here (§§ 100.010–100.200) define and require that such "projects" be "industrial plants," whereas the functions of the Division generally (§ 255.031) include "all facets of the economy" and the Commission is charged with a broad duty of promotion. Section 255.021(1), dealing with the functions of the Division, appears to make an express distinction between "industrial" and "commercial" development programs by the use of both words in sequence; and see also § 255.031(1). In other words, the purposes for which municipal revenue bonds may be issued by a city are much more restricted than are the general functions of the Division. Thus, "commerce" in its broad sense is included within the functions of the Division, but not in the constitutional or statutory authority for the issuance of such bonds. We believe that this comparison is, to some extent, indicative of an underlying intent. Referring again to § 27, Art. 6 of the constitution, supra, namely,—"plants * * * for manufacturing and industrial development purposes" it seems possible that the use of the word "*and*" might indicate that any such plant should be constructed and used for both manufacturing and industrial purposes; this, by reason of the failure to use the word "or" in lieu of "and." However, we shall not construe the term on so narrow a construction, but determine whether the proposed laundry *is* an "industrial plant."

Counsel cite State ex rel. Kansas City Power & Light Co. v. Smith, Banc, 342 Mo. 75, 111 S.W.2d 513, loc. cit. 515, where the Court, in a wholly different context, defined "industrial establishment" as: "* * * a place of business 'which employs much labor and capital and is a distinct branch of trade; as, the sugar industry.' Webster's New International Dictionary." That case involved the right of the State to levy sales taxes upon electric current sold to municipalities for their city waterworks, and to the street railway system of Kansas City. The Court held that

those customers were not "domestic, commercial or industrial customers" within the meaning of the applicable statute, and noted also that each of those words had a separate meaning. It should also be noted that the statute involved there expressly distinguished between "commercial" and "industrial" customers. The actual holding was that the customers in question did not come within any of those categories. The Court noted that "the phrase 'domestic, commercial or industrial consumers,' standing alone, would lead to sharp differences of opinion as to its meaning." The somewhat casual definition quoted above is in nowise controlling for our purposes. In such generalized references to the "sugar industry" or the "steel industry," etc., the word "industry" is used as a classification of a total line of business endeavor which includes plants, offices and all the accessories of a major element of our business world. Definitions from that point of view are of little value here.

Since the only cases cited by either side which approach a determination of our question are Pennsylvania cases, we consider those now. All of them involved constructions of *taxing* statutes. The cases we shall thus consider are United Laundries, Inc. v. Board of Property Assessment, 359 Pa. 195, 58 A.2d 833; North Side Laundry Co. v. Allegheny County Board of Property Assessment, 366 Pa. 636, 79 A.2d 419, and Messenger Publishing Co. v. Board of Property Assessment, 183 Pa.Super. 407, 132 A.2d 768. The issue in all of them was the construction of Pennsylvania statutes specifying what properties should be assessed as *real estate* and, among various other categories, the statutes included "mills and manufactories of all kinds," and "all other real estate not exempt by law from taxation." The property owners involved in the first two cases were largely commercial laundries. In United, supra, the lower court had reduced the assessment by eliminating the value of machinery and equipment. On appeal the Court held that a laundry was not a "manufactory," but concluded that all machinery and equipment was taxable as real estate under the Pennsylvania "assembled industrial plant doctrine," which had been recognized in sundry prior cases; this, in substance, was a ruling that all machinery and equipment placed in and regularly used in such plants became a part of the real estate *for purposes of taxation*. The Court reaffirmed that doctrine and also held, rather casually it seems, that a laundry may be classified as an industrial plant under the doctrine by merely saying, 58 A.2d at loc. cit. 835: "Clearly, it was the intendment of the Legislature also to cover and tax, under that same general term, machinery and equipment necessary to the operation of such plants as that of appellees." The opinion is thus founded upon the somewhat peculiar local doctrine that machinery, although not constituting fixtures within the ordinary concept, is nevertheless a part of the real estate. Incidentally, two Judges dissented there.

In North Side Laundry, supra, the assessment of the real estate of a commercial laundry was again involved. The contention was made that there had been a systematic and intentional undervaluation of other taxable property in the same class by failing to apply the "assembled industrial plant doctrine" to other properties such as service stations, automobile repair shops, hotels, etc., all of which were alleged to be "service industries." This contention was denied. The Court merely reiterated its ruling that the laundry was an "industrial plant" within the meaning of the Pennsylvania taxing statutes, and that its equipment was part of the real estate. The Court said, however, at 79 A.2d loc. cit. 421: "Therefore, the fact that the businesses to which plaintiff referred are sometimes generically called 'industries' is irrelevant to the issue here raised. The question is whether their establishments are industrial plants. * * * The law can do no better than to define an industrial plant as that type of establishment which the ordinary man thinks of as such. Certainly a commercial laundry comes within that defini-

tion but the other businesses here mentioned do not." In the case of Messenger Publishing Co. v. Board of Property Assessment, 183 Pa.Super. 407, 132 A.2d 768, a decision of the Superior Court of Pennsylvania, the Court held that a structure in which a newspaper was printed was an industrial plant, under the "assembled plant" doctrine; but the Court noted also (which might well have been an independent ground for the decision) that such establishments had long been considered as "manufacturing corporations" in Pennsylvania.

We find that the Attorney General furnished an opinion (not cited in either brief) on March 29, 1966, to the Director of the Division of Commerce & Industrial Development concerning this project. Therein he considered the Pennsylvania cases and the Kansas City Power & Light Co. case, supra, and arrived at the conclusion that the laundry in question was an "industrial plant." His opinion contains nothing which we have not independently considered in this opinion, and nothing which is not contained in the brief of respondents. In fact, respondents seem to have followed that opinion without citing it.

The Pennsylvania cases are founded upon a peculiar doctrine of real estate taxation, which is more or less contrary to general law. That Court recognizes, however, that one essential question is: Would the ordinary man regard a commercial laundry as an "industrial plant?" It also recognizes that references to a widespread type of business as an "industry" are of no consequence; on that we agree, and such a reference in State ex rel. Kansas City Power & Light Co., supra, is of no real value here. We also note that in the latter case the Court was attempting to define an "industrial establishment" in a wholly different context from the meaning of the words "industrial plant" as used in the controverted sections of our constitution and statutes.

 Basically, we must come back to construe for ourselves the phrase "plants to be leased * * * for manufacturing and industrial development purposes * * *." And we note again that, while respondents concede that a laundry cannot be a *manufacturing* plant, nevertheless the use of that word in the provision may be some evidence of an intent as to the general nature of the projects included. In construing a constitutional provision, non-technical words are to be taken in their natural and ordinary meaning. State ex rel. Heimberger v. Board of Curators of University of Mo., 268 Mo. 598, 188 S.W. 128, 130; State ex rel. and to Use of Buck v. St. Louis & S. F. R. Co., 263 Mo. 689, 174 S. W. 64, 65; State ex rel. Gordon v. Becker, 329 Mo. 1053, 49 S.W.2d 146, 148; Vanlandingham v. Reorganized School Dist. No. R-IV of Livingston County, Mo., 243 S.W.2d 107, 109. And the understanding of the *people* who adopted the Constitution (or amendment) is a vital consideration. In Household Finance Corp. v. Shaffner, 356 Mo. 808, 203 S.W.2d 734, the Court said at loc. cit. 737: "However, while it is proper to consider the debates, 'the question in interpreting a constitution is not so much how it was understood by its framers as how it was understood by the people adopting it, since the constitution derives its force as a fundamental law, not from the action of the convention, but from the people who have ratified and adopted it * * *.' 11 Am.Jur. 707. The only way we can determine what meaning was conveyed to the voters by the provision is to determine what it means to us, giving the words used their ordinary and usual meaning."

 Considered in their full context, we do not construe the words "plants * * * for * * * industrial development" as fairly including commercial laundries. We do not agree with the rulings in the Pennsylvania cases if in fact they are applicable at all to our situation, which we doubt. We must exercise our own judgment in arriving

at what we think the people of Missouri intended, and it is our firm belief and our ruling that they did not intend thus to authorize city revenue bond projects for the construction and financing of commercial laundries which, in essence, are *service businesses*. We shall not attempt to define an "industrial plant" in a form which would be applicable to all cases and situations. That would be most difficult, probably misleading as applied to other facts, and perhaps impossible. A laundry neither manufactures anything nor does it process anything by changing its characteristics or nature; it is not a plant for large-scale storage or assembly; it merely washes garments, cloths, rags, etc., and in this instance, *rents* out certain accessories. In these activities such a project would naturally compete with local business, and perhaps do so with distinct advantages in its favor. A laundry is purely a service institution. Neither the size nor the cost of the building and equipment nor the number of employees is controlling.

We have examined, by way of analogy, the laws of several neighboring states on this general subject. Kansas has, by express wording, including *commercial* projects within the scope of permissive developments. Kansas Stat.Ann., Official, Vol. 1, § 12–1740. In others, the projects are generally confined to *industrial* development. Vol. 2A Ark.Stat. 1947 Ann., 1967 Pocket Sup., Tit. 13, Ch. 16; Ark. Constitutional Am., No. 49, 1967 Pocket Sup.; Okla.Stat.Ann., Title 62, Ch. 5, § 652; Okl.Constitution, Art. 10, § 35 (1962); Smith-Hurd Ill.Ann.Stat. Ch. 48, § 833(c). The Iowa Code Ann., Vol. 22, 1966 Cum. Sup., Ch. 419, § 419.1, includes the " * * * manufacturing, processing or assembling of any agricultural or manufactured products, * * *." The Michigan Statutes, Vol. 4A, Michigan Stat.Ann., 1965 Cum.Sup., § 5.3533(22), Comp.Laws 1948, § 125.1252, P.A.1963, No. 62, are in part as follows: "Sec. 2. As used in this act: (a) 'industrial building' means any building or structure suitable for and intended for or incidental to use as a factory, mill, shop, processing plant, assembly plant, fabricating plant, warehouse or research and development facility." In some of these states the statutes are apparently considered as coming within the permissible scope of general constitutional provisions without the necessity of any specific authorization.

There may be a somewhat "gray" line of demarcation between the boundaries of "plants for industrial development" and of those businesses which are rightfully excluded. Certainly the construction and leasing of a store to Woolworth's, or a hotel, or an automobile repair shop, or a hardware store, or a shopping center, or a bank, would not be permissible. Such businesses (except possibly the stores) are primarily service institutions and, in any event, they are all strictly *commercial* projects; the mere fact that they might enhance the economic development of the community by employing a large number of people and by affecting commerce generally will not suffice to permit their classification as "industrial plants."

We do not hold that any of our industrial development statutes, §§ 100.010—100.-200, 1967 Sup., V.A.M.S. are unconstitutional. We merely hold that the project proposed here is not within the contemplation of either the constitution or those statutes. The respondents had no authority to approve the plan, and their purported approval resulted from an attempt to construe the constitution and the statutes, which construction we now hold to have been improper. The fact that they received an opinion from the Attorney General does not alter the situation in any way, except that it relieves them from any accusation of intentionally wrongful conduct.

Under the principles applicable to mandamus, which we have reviewed at some length, we hold that the peremptory writ should issue here. Although the City of Joplin is not a party to this cause, the approval of respondents is an element absolutely necessary to the culmination of the

project, and a writ in the present case will be fully effective. The respondents have acted outside their jurisdiction by presuming to construe the constitution and to extend its terms to this project; if they had a discretion at all, it has been abused, for their action has been wrong "as a matter of law." State ex rel. Knight Oil Co. v. Vardeman, Banc, Mo., 409 S.W.2d loc. cit. 675. Although respondents have already acted in their purported approval of the plan, the rights and interests of the public of the whole state are involved, a legally wrongful action has been taken, and a rescission is in order. The judgment of the Circuit Court is reversed. It is directed to issue its peremptory writ of mandamus commanding respondents: (1) to rescind their purported approval of the project submitted to it by the application of the City of Joplin, as referred to herein; and (2) to notify the said City that they have no authority under the law to approve the said project.

All of the Judges concur.